This is an action to recover damages (1) for personal injuries which the plaintiff suffered when he fell from a platform in the town of Weldon, N.C. while he was engaged in the performance of his duties as an employee of the defendant; and (2) for personal injuries which the plaintiff suffered after he had fallen from said platform.
The plaintiff is a resident of the city of Richmond, in the State of Virginia.
The defendant is a corporation, duly organized and doing business in the State of North Carolina, as a common carrier. It owns and operates railway lines which extend from the city of Richmond, in the State of Virginia, in a southerly direction to and through the town of Weldon, in the State of North Carolina.
The plaintiff is now and has been almost continuously for 26 years an employee of the defendant. His services have been satisfactory to the defendant. On 18 April, 1934, the plaintiff was sound in mind and in body and was able to perform and did perform his duties as an employee of the defendant to its satisfaction.
Two causes of action are alleged by the plaintiff in his complaint in this action.
The facts alleged as constituting his first cause of action are as follows:
"4. On 18 April, 1934, the plaintiff, being then engaged in the employment of the defendant as a flagman on its passenger train from Richmond, Virginia, to Florence, South Carolina, was duly performing his duties as such flagman when said train, on its southbound trip from *Page 758 
Richmond to Florence, being engaged in interstate commerce, arrived at the town of Weldon, in the State of North Carolina, at about 2:15 a.m. When the said train arrived at Weldon, the plaintiff's duty required him to leave the train and go to the rear thereof to protect said train, to see about the condition of said train at the rear thereof, the condition of the marker and lights, and to perform certain necessary duties with respect to the steam valves.
"It had always been the custom of defendant's engineer to stop the train entirely on the platform with sufficient clearance at the rear thereof that passengers and crew could alight safely from all cars to the platform, and that members of the train crew could safely walk on said platform to and around the rear of said train in connection with their duties.
"On said date and trip above referred to, when the said train arrived at Weldon, N.C. and the station was announced and the train stopped for the discharge of its passengers and crew, defendant's engineer negligently failed to pull his engine far enough south so as to make the rear of the train stop on the platform at the north end, but instead negligently stopped said train at such point that the rear car of said train projected northward beyond the platform and over a high trestle upon which said train had come, which said trestle was about 60 feet in height above the ground beneath, the projection of said train to the north of said platform extending about 12 or 15 feet. There was no guard, barrier, or protection of any kind provided by the defendant at the north end of said platform to prevent either passengers or train crew from falling or walking off the said north end of the platform, and there was no light or warning marker of any kind provided by the defendant to indicate to one walking northward along the platform that the end of the platform was near, notwithstanding the duty owed by the defendant so to provide, the only guard and barrier on said platform being a wall at the east side of the platform about 6 feet high to prevent persons falling or walking from said platform off the east side, the said east side of the platform being about 6 feet from the side of the train; but, as aforesaid, there was no guard or barrier at the north end, which was near the rear of said train, except one upright one-foot board at the end of said platform next to the last wall thereof, leaving an open space between said board and the train at the north end of said platform of about 5 feet, and constituting a menace to passengers alighting from defendant's trains and to the crew alike.
"At the time the said train arrived at Weldon, N.C. it was dark and rainy, and the north end of the platform was negligently permitted to be unlighted, and while there were small lights along said platform a very short distance from the station northwardly, said lighting did not extend at the time complained of far enough northwardly to give any light to *Page 759 
the north end of said platform, and was insufficient to disclose to passengers or train crew the proximity of the dangerous opening at the north end of said platform. On the occasion complained of, the curtains of the rear car in said train, which was a private car, had been pulled down so that there was no light available from said car.
"When the said train stopped on said platform, the plaintiff, in pursuance of his duties, got off the train at the third car from the rear, and, assuming that the train had stopped at its customary and regular place upon the platform, he walked slowly down the east side of the train towards the rear end of the train, at the north end, examining the train as best he could with the light from the small lantern which he had, but which was inadequate to light the surrounding space. Plaintiff had no idea and no reason to suspect that the train projected beyond the platform, and, relying upon the custom of the engineer to stop the train at a safe point, he continued slowly to the rear of the train, with his attention engrossed upon the performance of his duties as a flagman on defendant's train.
"Suddenly, before he reached the rear of the train, and without any fault on his part, and while relying upon the duty of the defendant as his employer to furnish him a safe place to perform his regular duties, and safe and adequate equipment upon the premises for his protection, and relying upon the duty of the engineer to avoid any act of negligence, and upon his accustomed course in handling the train in such manner or at such place as would not be calculated to endanger him while performing his duties as a flagman on the train, the plaintiff stepped off the north end of the said platform into the open space at the end thereof, and fell about 60 feet before he struck the ground, his fall being so violent that when he struck the ground he made a deep hole in it, and as a result of said fall, caused by the negligent acts and omissions of duty by the defendant, the plaintiff was injured in the manner and to the extent hereinafter set out in detail.
"Before going towards the rear of the train, on the outside thereof and on the platform, the plaintiff had tried to go through the rear car, but notwithstanding the fact that he was entitled to have free access to get through said car, the same was closed to him and he had to go to the rear by way of the platform. If said rear car had not been closed to him in such way as prevented free access to and through said rear car, it would have been possible for the plaintiff to cut out the steam from the rear platform of said car without alighting upon the platform on which the train was standing, but in such event he would not have had adequate opportunity to perform his other duties with respect to the protection of the rear of the train, and with respect to the inspection of the cars making up said train. *Page 760 
"5. (On motion of the defendant, this paragraph was stricken from the complaint.)
"6. The defendant was grossly negligent and careless in the following particulars, inclusive of and in addition to the acts of negligence and omissions of duty above set out, which separately caused and concurred in producing the injuries to the plaintiff herein complained of, and were the proximate cause thereof, to wit:
"(a) The defendant negligently failed to stop its train at the customary and regular place of stoppage for the discharge of its passengers and crew;
"(b) The defendant negligently and carelessly stopped its train for the discharge of its passengers and crew at a point on said platform with the rear end of the train projecting beyond the north end of said platform, thus constituting an extreme hazard and condition dangerous to the safety of its passengers and crew;
"(c) The defendant negligently failed to have guards or barricades at the north end of said platform for the protection of its passengers and train crew;
"(d) The defendant negligently failed to have and keep the north end of said platform adequately lighted;
"(e) The defendant negligently failed to have markers or lights at the northern end of said platform, or warning signals of any kind to indicate the proximity of the dangerous opening to passengers or train crew, or to indicate to the engineer where the end of the said platform was, and thereby enable him to stop his train upon said platform with safety to and protection of its passengers and train crew;
"(f) The defendant negligently failed to provide free access to and through the rear car of said train to enable the plaintiff and other members of the train crew to go through said train and to perform some of their necessary duties at the stopping place with less hazard;
"(g) The defendant failed to furnish the plaintiff and the crew of said train a safe place in which to perform their necessary duties at the town of Weldon upon the stoppage of its train, in that: The north end of the platform was open, unguarded, and dangerous to the train crew; was unlighted, was improperly constructed at a dangerous height for use as a platform for discharge of passengers and crew, was not equipped with markers, lights, or other warning signals or devices as set out in section (e) hereof, and free access through its train was not provided for the performance of their necessary duties by its employees, who were members of its train crew;
"(h) The defendant failed to furnish safe and adequate appliances and equipment for the protection of its passengers and train crew, *Page 761 
including the plaintiff, from the dangerous conditions then and there existing, as set out in subsections (c), (d), and (e) hereof.
"(i) The defendant negligently failed to remedy the dangerous conditions existing at the north end of said platform, constituting a menace to passengers and train crew, including the plaintiff, after and notwithstanding various complaints which had been made to its officers prior to the injuries complained of;
"(j) The defendant negligently constructed its station and approach thereto and the platform over and at the end of a dangerously high trestle running across the Roanoke River at said point, in such manner as to constitute an unfit place for its employees, including the plaintiff, to adequately perform their duties, and in such manner as to constitute a continuing danger and hazard to its passengers and train crew, including the plaintiff."
In paragraph 7, plaintiff alleges that "as a result of the negligent acts and omissions of duty of the defendant, hereinbefore set out, which concurred in producing and produced the fall of plaintiff from said platform and his consequent injuries," he sustained damages in the sum of $150,000.
On the facts alleged as his first cause of action the plaintiff demands judgment that he recover of the defendant the sum of $150,000.
The facts alleged in the complaint as constituting plaintiff's second cause of action, in addition to those alleged as constituting his first cause of action, are as follows:
"1. After the plaintiff fell about 60 feet and struck the ground, as hereinbefore alleged, he crawled up beside the pillars about 12 feet away to get out of the rain, expecting that his absence would be immediately discovered and that he would be found quickly, as he could and should have been by the exercise of reasonable care and diligence on the part of the defendant. His white lantern was broken but he lighted his red lantern, notwithstanding the broken and crushed condition he was in, and tried to attract attention. He remained in his helpless condition, suffering all night excruciating and agonizing pain and being conscious throughout until he was discovered the next morning about 7:45 o'clock by the Seaboard Air Line section master.
"2. The defendant was careless and negligent in failing to have discovered his absence and to have located him and removed him promptly, and to have rendered him necessary medical assistance and aid in procuring prompt medical treatment, and thereby to have prevented his protracted suffering and exposure, in that:
"(a) Defendant's engineer, agent, and employee, and plaintiff's fellow servant, negligently, and in violation of instructions and custom, moved out from Weldon without getting plaintiff's signal as flagman so to do, *Page 762 
which had not been given, and could not have been given, and upon failure to get such signal from which failure he should have known that plaintiff was missing, negligently failed to take or cause steps to be taken for his discovery, protection, and the procurement of first aid and medical assistance.
"(b) The other members of the train crew, agents and employees of the defendant, and fellow servants of the plaintiff, including the conductor, baggage master, and porter, should have discovered plaintiff's absence. It was their duty and custom to pass his signals along to the engineer, but they negligently failed in their duties in these respects and negligently failed to take prompt steps to have discovered plaintiff and relieve him from his pain, suffering, and exposure. Even after the train left Weldon his absence should have been discovered by the engineer and other members of the train crew, as they were required and it was their custom and instructions to get his signals at each stop, and in the absence of getting such signals they should have known, in the exercise of reasonable care, that he was missing, and have taken necessary and prompt steps to discover his whereabouts and condition, and if such steps had been taken promptly, plaintiff could have been discovered in time to have saved him from a large portion of his suffering throughout the night, and exposure, all of which they negligently failed to do as agents and employees of the defendant and fellow servants of the plaintiff.
"(c) Plaintiff is informed and believes and upon such information and belief alleges that when the train arrived at Rocky Mount, about an hour thereafter, his absence from the train was discovered by a car inspector at Rocky Mount, who, as agent and employee of the defendant and fellow servant of the plaintiff, owed the plaintiff a duty to have reported that he was missing and to have caused necessary and prompt steps to be taken to discover his whereabouts and condition, and give him immediate first aid and relief from his suffering and exposure, and that upon such report that he was missing, if such report had been made, the defendant owed the duty to the plaintiff to take prompt and necessary steps for his protection, all of which the defendant failed to do, and the negligence of said inspector was the negligence of the defendant.
"(d) Plaintiff is informed and believes and upon such information and belief alleges that when the train got to Weldon tower, only about one-fourth of a mile south of where the plaintiff fell, defendant's telegraph operator, employed at that point, should have gotten his signal before permitting the train to go forward, and that he did negligently indicate that said signal had been received and permit said train to go forward, notwithstanding that plaintiff gave no such signal and could not have given one, and that this omission of duty and negligent conduct *Page 763 
prevented an earlier search for and discovery of plaintiff's condition, which negligence was the negligence of the defendant.
"3. By reason of the negligent acts and omissions of duty of defendant's agents, servants, and employees hereinbefore set out, whose negligence is imputed to the defendant, the plaintiff's absence from the train was not discovered until the train got to Selma, North Carolina, and no search was made by the defendant at Weldon, but if defendant had fully performed its duties, through its employees as above set out, the plaintiff's whereabouts and condition could have and would have been discovered promptly and he could have and would have been relieved promptly from the continuous agonizing pain and suffering and exposure he experienced prior to his discovery at about 7:45 o'clock in the morning by the employee of another railroad company.
"4. As a result of the negligent acts and omissions of duty by the defendant's agents and employees, constituting negligence of the defendant, the plaintiff was permitted to suffer all the remainder of the night excruciating agony and menacing exposure to the cold and inclement weather, and thereby the injuries which he had received in falling from the platform were greatly aggravated, and better recovery therefrom prevented, all to his great damage in the sum of $20,000."
On the facts alleged in the complaint as constituting his second cause of action against the defendant, the plaintiff demands judgment that he recover of the defendant the sum of $20,000.
In its answer to the complaint, the defendant denies all the material allegations therein, which constitute his first cause of action, and pleads in bar of plaintiff's recovery on said cause of action his assumption of the risk incident to his employment by the defendant as a flagman on defendant's train, and his contributory negligence as a proximate cause of his alleged injuries, thus raising issues of fact to be tried by a jury.
The defendant demurs to so much of the complaint as alleges a second cause of action against the defendant, on the ground that the facts stated therein are not sufficient to constitute a cause of action, for that it is not alleged in the complaint that defendant had actual knowledge that plaintiff had fallen from the platform at Weldon, N.C. and thereby suffered injuries as alleged in the complaint, and on the further ground that in his complaint the plaintiff has attempted improperly to split a single cause of action into two causes of action, and thereby recover damages on both causes of action, whereas, if he is entitled to recover at all, he is entitled to recover on the single cause of action alleged in the complaint.
The action was heard on defendant's demurrer to the second cause of action.
The court, being of opinion that the facts stated in the complaint as constituting the second cause of action are not sufficient to constitute a *Page 764 
cause of action against the defendant, sustained the demurrer and dismissed the action as to said second cause of action.
The plaintiff excepted and appealed to the Supreme Court, assigning as error the judgment dismissing the action as to the second cause of action alleged in the complaint.
"In the absence of a statutory or contractual obligation, there is, as a general rule, no duty resting upon the employer to provide surgical or medical attendance or medicine for an employee who is injured or becomes ill while in his employment, except, perhaps, in a case in which the employee gives service without compensation.
"However, there is a tendency upon the part of the courts to hold that where in the course of his employment a servant suffers serious injury or is suddenly stricken down in a manner indicating immediate and emergent need of aid to save him from death or serious harm, the master, if present, is bound to take such reasonable measure or make such reasonable effort as may be practicable to relieve him, even though the master is not chargeable with fault in bringing about the emergency, and in some jurisdictions it is said to be the duty of the employer to provide medical or surgical assistance in the case of an emergency where it is imperatively demanded to save life or prevent serious bodily injury.
"Hence, it has been held that a railroad company, in the absence of any contract obligation or a statute regulating the subject, is under a legal duty to use reasonable care in furnishing medical aid and suitable attention to its employees who are injured in the course of their employment, although the injury may not have been caused by the negligence of the company, and there is authority in behalf of extending this rule to all employees engaged in hazardous employment." 39 C. J., 240.
"If an employee of a railroad company is injured as a result of hazards to which his employment exposes him, and if his injuries are of such a nature as to render him incapable of caring for himself, it becomes the duty of the company to take such steps as are reasonably necessary and proper, under the circumstances, to prevent an aggravation of the injury through exposure or for the want of medical or surgical assistance."Tippecanoe L. T. Co. v. Cleveland, etc., R. Co., 57 Ind. A., 644, 104 N.E. 866.
"The courts have also found much difficulty in settling on a ground on which to rest the liability of the master in cases like this when there is no contract or statute imposing the duty of taking care of an injured *Page 765 
servant. We think, however, it may well be put upon the ground that as it would be a cruel and inhumane act to leave a helpless servant who was injured in the course of his employment to suffer or die from want of care and attention, there is an obligation growing out of the relation of master and servant that puts upon the master the duty of taking such reasonable care of the servant as the existing circumstances will permit." Troutman v.Louisville, etc., R. Co., 119 Ky. 145, 200 S.W. 488.
"When an employee is engaged in any dangerous business for the master, and while in the performance of his duties, as such, he is so badly injured that he is thereby rendered physically or mentally incapable of procuring medical assistance for himself, then that duty as a matter of law is devolved upon the master and he must perform that duty with reasonable diligence and in a reasonable manner, through the agency of such of his employees as may be present at the time." Hunicke v. Meramic Quarry Co.,262 Mo., 560, 172 S.W. 43, L.R.A., 1915-C, 789, Ann. Cas., 1915-D, 493.
In the instant case it is not alleged in the complaint that any of the employees of the defendant was present at the time the plaintiff fell from the platform at Weldon, or that the defendant had actual knowledge of the condition of the plaintiff as the result of his fall. Nor are facts alleged in the complaint from which it can be held that the defendant had constructive knowledge of such condition. At most, the defendant knew when and after its train left Weldon that the plaintiff, while engaged in the performance of his duties as a flagman on said train, had disappeared from the platform and had not returned to the train. This knowledge did not impose upon the defendant or any of its employees the duty to make an investigation to discover the cause of plaintiff's disappearance from the platform or failure to return to the train. The plaintiff may have disappeared from the platform and failed to return to the train, while it was standing at the station at Weldon, voluntarily. No facts are alleged in the complaint which imposed upon the defendant or its employees the duty to presume to the contrary.
Conceding that if the defendant had known that the plaintiff had fallen from the platform at Weldon, and had thereby suffered injuries which required immediate attention, medical or otherwise, the law would have imposed upon the defendant the duty to exercise reasonable diligence to provide such attention, we cannot hold that in the absence of such knowledge such duty was imposed upon the defendant. We therefore find no error in the judgment dismissing the second cause of action alleged in the complaint. The judgment is
Affirmed. *Page 766