No. 35,767

MAUDE HAGGARD, Administratrix of the Estate of Alvin A. Haggard, Deceased, *Appellant*, v. FRANK O. LOWDEN, JAMES E. GORMAN and JOSEPH B. FLEMING, Trustees of the Estate of The Chicago, Rock Island & Pacific Railway Company, *Appellees*.

(134 P. 2d 676)

Opinion filed March 6, 1943.

*Robert M. Finley,* of Hiawatha, *Charles Rooney* and *Randal C. Harvey,* both of Topeka, were on the briefs for the appellant.

*J. E. DuMars, Clayton M. Davis,* both of Topeka, and *Paul H. Royer,* of Abilene, were on the briefs for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover damages under the federal employers' liability act. Plaintiff appeals from an order sustaining a demurrer to her second amended petition, referred to hereafter as the petition.

The petition, after alleging appointment and qualification of plaintiff as administratrix of the estate of Alvin A. Haggard, deceased, and that defendants, as trustees, were operating the Chicago, Rock Island and Pacific Railway Company, which was engaged in interstate commerce, and that Alvin A. Haggard was employed as conductor in charge of a certain freight train, alleged that the train reached the railroad yards near the west city limits of Topeka about 12:15 a. m. on August 17, 1938, and the entire train crew except Haggard went to the railroad eating house, Haggard engaging himself in inspecting his train as required of him as conductor; that about 12:35 a. m. the train crew, consisting of the engineer, fireman, rear brakeman and head brakeman, returned to the train and negligently

and without authority proceeded with the train toward Armourdale, Kan., minus Haggard the conductor, and in violation of certain specified rules of the company, copies of which, with others hereafter mentioned, were attached to the petition and will be mentioned later so far as need be. It was further alleged that Haggard, while inspecting the train as his duties required, "was rendered unconscious by a blow on the head, the exact manner of receiving the same this plaintiff is unable to here set out, but in any event said injury was not in itself sufficient to produce death." That the injury occurred on the right of way and in close proximity to the train and at a time when Haggard was in pursuit of his duties.

It was further alleged that defendants and their agents, servants and employees left Haggard lying uncared for on the right of way and in such condition that he could not aid himself or secure medical attention or stem the flow of blood, and that the train crew continued the run without due regard for Haggard's welfare and without knowing where he was or what had happened to him and without making any attempt to locate him and determine his condition and the reason for his not being on the train or to ascertain that he was at a point of safety when the train was put in motion; that the defendants, their agents, servants and employees, upon returning to the train, failing to see Haggard at his accustomed place upon the train, or in the caboose or along the train inspecting it, considering the hour of time, darkness, the locality of the train and his unprecedented absence, failed to exercise ordinary care of prudent persons in determining the whereabouts of Haggard, or to report his absence as required by certain specified rules.

It was further alleged that Haggard, as conductor, was the only person vested with authority to order the movement of the train on its journey, certain rules being specified, and that defendants, their agents, servants and employees, in violation of specified rules, negligently and without authority took the train out of Topeka without reporting to Haggard for duty and orders pursuant, and moved the train without authority; that Haggard was lying near the train, near the tracks and in plain view, and in such a position that the train crew could have seen him, but by reason of their negligent failure to exercise ordinary care and interest concerning his whereabouts, failed to observe him, and he was left lying along the train and tracks for approximately two hours and until discovered by members of the Topeka police department.

It was further alleged that Haggard, while lying unaided for such a long period, suffered loss of blood and from exposure and from lack of prompt medical care, all of which directly and proximately caused his death and which would have been averted if the servants and employees of defendants had promptly and seasonably located him and rendered aid, or had immediately reported his absence so that he would have been promptly treated, and that the direct and proximate cause of his death was due to acts of omission and commission by defendants, their servants and agents in eight particulars, including failure to make prompt determination of Haggard's whereabouts before moving the train, or to determine he was in a safe position when the train started, in negligently failing to provide him aid or medical attention, in moving the train without orders from Haggard and in proceeding without him, in moving the train without authority, in failing to report his unusual absence, and in failure to refrain from moving the train without an order from Haggard.

It would unduly extend this opinion to note each rule attached to the petition. Generally the rules provide for report of accidents, for movement of trains, for movement by train order, general regulations, train and yard service, etc. Among them are the following: That conductors must register and check the train at all register stations, unless relieved by train order; a train must not leave an initial station without a clearance; a train must not start until a proper signal is given; the conductor and engineer are responsible for the safety of the train and observance of the rules; brakemen are subordinate to conductors, and the general direction and government of a train is vested in the conductor and all persons employed on the train must obey his instructions. Further provision is made that if an employee is injured everything must be done to care for him properly, but we are not concerned with the details of that rule or the reports required to be made.

Defendants' demurrer to this petition having been sustained, the plaintiff appeals. In considering the questions presented we adhere to the rule that as against a demurrer, well-pleaded facts are assumed to be true, and the question is whether these facts, with all reasonable inferences to be drawn therefrom, constitute a cause of action. It is made clear by appellant's brief that she does not claim defendants or any of their employees caused or contributed to Haggard's injuries. She does contend that the injuries, in and of themselves, were not sufficient to have produced his death, but that such

a result followed from his being left unaided and exposed for about two hours, due to the allegedly negligent failure of the defendants and their servants and employees to discover him and render him aid. The questions presented by the appellant may be summarized as follows:

Where a conductor in interstate commerce is seriously injured from an unknown cause, while performing his duties at a stopping point, and under circumstances where he could have been found and his death prevented by the exercise of care by other members of the train crew, does their failure to so discover him constitute actionable negligence under the federal employers' liability act; and, under such circumstances, where the other trainmen, in alleged violation of company rules, started the train without making any effort to locate the injured conductor, and without discovering his predicament or reporting his absence, thereby delaying securing of medical care until too late to prevent his death which would not have otherwise occurred, does the violation of the rules constitute actionable negligence under the above act? Other questions stated are dependent on the two set forth.

Comprehensive briefs have been filed by both parties in which our attention is directed to many authorities. An examination shows that many of these decisions are of like kind and nature, and we shall therefore refer to only a few of them.

The present action arises under the federal employers' liability act (45 U. S. C. A., § 51) which provides that every common carrier engaged in interstate commerce is liable in damages to any person suffering injury while he is employed by the carrier in such commerce, for injury resulting in whole or in part from the negligence of the agents and employees of the carrier.

It is provided in the federal employers' liability act, and has been determined by many decisions, that the foundation of liability under the act is negligence of the carrier. (See, *e. g., Roebuck v. Railway Co.,* 99 Kan. 544, 162 Pac. 1153, *Schaefer v. Lowden,* 147 Kan. 520, 78 P. 2d 48, and cases cited.) It is not enough that negligence be shown—it must further be shown the negligence complained of was the proximate or legal cause of the injuries or death. See *A. T. & S. F. Ry. Co. v. Toops,* 281 U. S. 351, 74 L. Ed. 896, 50 Sup. Ct. 281, reversing *Toops v. Atchison, T. & S. F. Rly. Co.,* 128 Kan. 189, 277 Pac. 57.

In 38 Am. Jur. 705, the rule with reference to proximate cause is stated:

"§ 57. Natural and Probable Consequences. The rule which has been stated and applied more often than any other test of proximate cause is that which determines an injury to be the proximate result of negligence only where the injury is the natural and probable consequence of the wrongful act or omission. It is not enough to prove that the accident is the natural consequence of the negligence. It must also have been the probable consequence. . . . Many of the authorities state an additional condition, that it appear that the injury was anticipated, or that it reasonably should have been foreseen, by the person sought to be charged with liability, . . ."

(See the Kansas cases cited in the notation to the last sentence.) In the same work, page 712, it is further said:

"§ 61. Bare Possibility of Injurious Consequences. In accordance with the general test of proximate cause above set forth, the law does not charge a person with all the possible consequences of his negligent act. He is not responsible for a consequence which is merely possible, according to occasional experience, but only for a consequence which is probable, according to ordinary and usual experience. It has been said that the natural and probable consequences are those which human foresight can anticipate because they happen so frequently that they may be expected to happen again, and that the possible consequences are those which happen so infrequently that they are not expected to happen again. Negligence carries with it liability for consequences which, in the light of attendant circumstances, could reasonably have been anticipated by a prudent man, but not for casualties which, although possible, were wholly improbable."

In Restatement, Torts (Vol. 2, Negligence), may be found the following:

"§ 430. Necessity of Adequate Causal Relation. In order that a negligent actor shall be liable for another's bodily harm, it is necessary not only that the actor's conduct be negligent toward the other . . . but also that the negligence of the actor be a legal cause of the other's harm."

"§ 431. Legal Cause; What Constitutes. The actor's negligent conduct is a legal cause of harm to another if—

(a) his conduct is a substantial factor in bringing about the harm, and

(b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm."

It is clear from the petition, and as is noted above it is conceded by the appellant, that the original injury sustained by Haggard was not occasioned by nor due to any negligence of the appellee. The substance of appellant's contentions is that appellees owed a duty to render aid to an injured employee, regardless of the cause of his injury; that the violation by their employees of company rules was the legal cause of Haggard's injuries not being sooner discovered so that aid could have been rendered, and that it was not necessary

to liability that appellees have actual knowledge of Haggard's injuries at the time they were received by him.

Without exposition, we think it may be said the appellees would be liable, both under the law and under the company's rules, for failure to render aid, adequate under the circumstances, to an employee injured in the course of his employment, from the time they had actual knowledge of the injuries. We need not pursue this rule further for under the allegations of the petition it cannot be said the appellees had such knowledge. On the contrary the allegations are that after Haggard received his injuries, through appellees' negligence he was not found and was permitted to be unaided and without attention, his death resulting from his exposure and lack of medical care.

Such negligence as is alleged is the violation of the rules of the company by its employees. We note the rules with reference to the conductor being in charge of the train, which moves under train orders, and that it must not start until a proper signal is given. We note also that although other allegations are quite complete, there is absence of any allegation about orders for stopping at or moving out of the Topeka yards—but for our purposes we shall assume that a fair inference from what is pleaded is that the train stopped pursuant to orders.

We need not make an extended and critical examination of the rules to determine their full applicability to a situation such as is alleged in the petition. There is no rule pleaded which requires the conductor or any member of the train crew to make an examination of the train to determine that each crew member is aboard when it gets under way. But we shall assume for present purposes that under the rules the movement of the train was controlled by the conductor and that he was the one to give the proper signal before the train started. Although the petition contains no specific allegation that Haggard received his injuries before the train started that is a reasonable inference to be drawn from the facts pleaded. Under all the circumstances pleaded and inferred, it may be assumed that the train was started and continued on its way, in violation of the rules.

Appellant contends that in order for the company to be liable for negligence, it was not necessary the train crew have actual knowledge that Haggard had been injured, and that the appellees' contention that duty to extend care and aid did not arise until their

employees knew of the injuries is too narrow, and that if the train crew knew or should have known that Haggard was in a position of danger, there was negligence in failure to assist him. In support of her contention, appellant does not cite any authority specifically in point, but she directs our attention largely to decisions dealing with injuries sustained in switching cases. The only decision of the court cited is *McMullen v. Railway Co.*, 107 Kan. 274, 191 Pac. 306, and it is clearly distinguishable on the facts. Appellant also quotes excerpts from *Pullman Co. v. Montimore*, 17 F. (2d) 2, but from an examination of that case it appears a porter who claimed damages from exposure, was left to guard a car placed on a siding by the company, and that the company was aware of the circumstances which led to the exposure. None of the cases cited support the contention that under circumstances similar to those here involved, notice of the injury is not necessary.

Appellees direct our attention to many decisions, some rather closely in point, and some from which an analogy may be drawn that, under the circumstances, actual knowledge is required. Among these decisions is *Batton v. R. R.*, 210 N. C. 756, 188 S. E. 383, which involved the sufficiency of a petition to state a cause of action. It was alleged that plaintiff was employed as a flagman on a passenger train, and that his duties required him to go to the rear of the train and protect it when stopped at a station; that on a certain dark night, while performing his duties, he stepped off the end of a platform and fell a distance of sixty feet where he remained until the next morning, suffering from pain and exposure. He charged the defendant was negligent in failing to discover his absence, to locate him, and to render him prompt medical attendance. The court, in deciding the case, stated, in part, as follows:

"In the instant case it is not alleged in the complaint that any of the employees of the defendant was present at the time the plaintiff fell from the platform at Weldon, or that the defendant had actual knowledge of the condition of the plaintiff as the result of his fall. Nor are facts alleged in the complaint from which it can be held that the defendant had constructive knowledge of such condition. At most, the defendant knew when and after its train left Weldon that the plaintiff, while engaged in the performance of his duties as a flagman on said train, had disappeared from the platform and had not returned to the train. This knowledge did not impose upon the defendant or any of its employees the duty to make an investigation to discover the cause of plaintiff's disappearance from the platform or failure to return to the train. The plaintiff may have disappeared from the platform and failed to return to the train, while it was standing at the station at Weldon, voluntarily. No

facts are alleged in the complaint which imposed upon the defendant or its employees the duty to presume to the contrary." (l. c. 765.)

Another case to which our attention is directed is *Weigand v. Chicago, R. I. & P. Rly. Co.*, 121 Kan. 610, 249 Pac. 615. There plaintiff was employed to make light repairs on freight cars, to do which he traveled from station to station. When leaving one station he was directed by the conductor to put his tools in a car loaded with coal and to ride thereon. During the course of the trip he was assaulted by "hoboes" and thrown from the train and badly injured. He made his way to a near-by house. In his action he charged he was not provided with a safe place to ride; that the defendant's employees negligently permitted the "hoboes" to ride the train and saw them throw plaintiff from the train, and did not stop the train nor give him any attention or care whatever. Although the principal part of the opinion deals with the company's failure to give him a safe place to ride, and its liability for the acts of the "hoboes," it was stated that:

"On no rational theory can this court discover a basis for subjecting the defendant railway company to liability for the injuries sustained by plaintiff." (l. c. 614.)

We are of opinion that, under the circumstances of this case, the company was not negligent in not extending aid to its injured employee, when it was not aware of such injuries.

Our decision need not be rested solely on the question of notice or lack of it. Assuming that violation of rules by appellees' employees was negligence, it must appear that the injuries sustained by Haggard were the natural and probable consequences of that negligence.

What may be said to be natural and probable consequences resulting from such negligence as there may have been in starting the train without a proper signal from the conductor? Probably it might have resulted in his or some other crew member being left behind, because that result might happen from time to time if the rule were disobeyed, but if it were disobeyed repeatedly from day to day and at every place where the train stopped, would it lead to any conclusion a member of the train crew had been assaulted and left lying beside the track? We think not. Foresight and anticipation of an event may be said to apply only to those things that happen and recur, and not to things which, while possible, rarely if ever occur and are not likely to recur. If there was no reason to

anticipate injury, there was no actionable negligence. The petition contained no allegation even tending to show that Haggard's exposure and subsequent death was a natural· and probable consequence flowing from any violation of appellees' rules.

We conclude the trial court ruled correctly on the demurrer and its ruling is affirmed.

HARVEY, J., not sitting.