Mary Joanne BAKER, Appellee,

v.

Louis Henry WOLFE and Judith K. Wolfe,
Appellants.

No. 53091.

Supreme Court of Iowa.

Feb. 11, 1969.

Ross, Johnson, Stuart, Tinley & Peters, Council Bluffs, for appellants.

Robert M. Dippel, Council Bluffs, and Charles E. Kirchner, Omaha, Neb., for appellee.

BECKER, Justice.

Plaintiff's action is for injuries growing out of an automobile collision that occurred when she slowed down in traffic and her car was struck from the rear by the automobile owned by defendants and operated by defendant Louis Wolfe. The jury returned a verdict for plaintiff and defendants appeal. We affirm.

The accident occurred at what might be termed an offset intersection in heavy traffic at about 6:00 P.M. We provide our own non-scale, rough diagram for ease and clarity in recitation of the facts.

Avenue B and West Washington streets are essentially the same street from the standpoint of traffic flow. They are connected at North 8th Street by the above

diagramed offset intersection. The offset along North 8th Street is approximately 100 feet. Plaintiff, traveling east on Avenue B, stopped behind at least one other car in obedience to the red stop light controlling traffic entering North 8th Street. Defendant stopped immediately behind plaintiff. When the traffic light turned green the car ahead of plaintiff moved out. She activated her left turn signal, hesitated momentarily and followed. Both cars turned left on North 8th Street. The preceding car turned right on Washington and continued east.

Plaintiff intended to continue north on 8th Street. Plaintiff said she straightened her car from her left turn onto 8th Street and proceeded north at about five miles per hour. The car ahead of her turned right to go east on Washington Street and at about the same time she saw a black car come out of Washington Street with the green light and turn left immediately in front of her. The black car's action was permissible and should not have been unexpected. Plaintiff braked her car to allow the black car to pass in front of her. As she did so her car was struck from the rear by defendants' car. Neither driver was clear as to whether plaintiff was stopped, or almost stopped when the impact occurred.

Defendant, driving a standard shift car in low gear, hesitated slightly before following plaintiff's car around the corner. He said he followed plaintiff's car at a distance of four or five feet as it rounded the corner. He saw plaintiff's brake light come on. He was then about three or four feet behind plaintiff's car and might have been traveling a little over five miles per hour. Defendant-driver "slammed on" his brakes but didn't stop before the left front of his car struck the rear of plaintiff's car.

Defendant pled contributory negligence on the part of plaintiff in failing to keep a proper lookout, failing to have her car under control and stopping or suddenly decreasing her speed "without giving an appropriate signal as required by law". The

trial court also told the jury defendant had alleged "he was faced with a sudden emergency not of his own making and that he had a legal excuse for the violation of a statute".

Defendants assign two errors. They contend the instruction outlining plaintiff's duty to give an appropriate signal of her intention to stop or suddenly decrease speed was erroneous. They also urge the court gave an instruction on sudden emergency that was incomplete and erroneously applicable to plaintiff as well as to defendant.

I. On the first issue the court told the jury in instruction No. 11: "In this regard you are instructed that the laws of the State of Iowa provide that no person shall stop or suddenly decrease the speed of a motor vehicle without first giving an appropriate signal to the driver of any vehicle immediate to the rear when there is an opportunity to do so, which signal shall be by a lamp or device so constructed and located on the vehicle as to show the intentions and be plainly visible and understandable in normal sunlight."

Section 321.316, Code of Iowa, 1966 requires a signal of intention to stop or suddenly decrease speed "when there is opportunity to give such signal." Section 321.-317(1) provides: "Signals by hand and arm or signal device. (1) The signals required under the provisions of this chapter may be given either by means of the hand and arm as provided in section 321.318, or by a mechanical or electrical directional signal device or light of a type approved by the department and conforming to the provisions of this chapter relating thereto."

The gravamen of defendants' complaint is that under the facts of this case "the jury should have been instructed concerning both the methods of giving appropriate signals provided by Iowa Code sections 321.316 through 321.318 and should have been advised that they had a right to determine whether the signal actually given was sufficient under the circumstances.

Instead, they were told that the giving of a mechanical brake light signal was all that the law required without reference to the length of time given or any other circumstances."

■ What was said in Mongar v. Barnard, 248 Iowa 899, 913, 914, 82 N.W.2d 765, 774 is applicable here: "The trial court apparently felt the statutes require not only a signal to suddenly decrease speed but also an additional, different signal to stop. We cannot find such requirement. Apparently the legislature contemplated the same signal for a stop as for a sudden decrease of speed. Section 321.318 suggests the same hand and arm signal be given for both purposes. We find no indication different mechanical signals for these two movements are required by statute.

"We are not to be understood as holding, irrespective of statutory requirements, the common law duty of a motorist to exercise ordinary care may not, under the circumstances of a particular case, require a signal of his purpose to make some move which may be dangerous to other motorists. Clayton v. McIlrath, supra, 241 Iowa 1162, 1168, 44 N.W.2d 741, 745, 27 A.L.R. 2d 307, 313, quoted from in Division I, fully recognizes such a duty and cites several authorities in support."

■ Under the evidence in this case we hold instruction No. 11 was proper. The statute provides a driver may signal *either* by hand or arm *or* by mechanical or electric signal. There is no doubt from the evidence that plaintiff's brake light was activated when she depressed the brake pedal and defendant saw the brake light come on. There is no evidence plaintiff could have given a hand signal any sooner or more effectively than the brake light signal given when the brake pedal was depressed. The evidence did not require an instruction which would include reference to signals in addition to the one shown to have been given and admittedly seen and recognized by defendant.

II. Defendants' second division attacks the court's instruction on legal excuse. They urge; first, failure to include a complete statement on legal excuse; second, instructing the jury that the instruction applies both to plaintiff and defendant in this action; third, failure to refer to evidentiary acts which could be determined to have created an emergency. Stated otherwise, the third complaint is that the instruction contains a mere abstract definition of the terms having no application to the particular controversy which is contrary to the rules recognized in Gibbs v. Wilmeth, infra.

■ III. Legal excuse has been defined to mean: (1) anything that would make it impossible to comply with the statute or ordinance; (2) anything over which the driver has no control which places his car in a position contrary to the provisions of the statute or ordinance; (3) where the driver of the car is confronted by an emergency not of his own making, and by reason thereof he fails to obey the statute; (4) where a statute specifically provides an excuse or exception. Gibbs v. Wilmeth, Iowa, 157 N.W.2d 93, 96 and Kisling v. Thierman, 214 Iowa 911, 243 N.W. 552. When legal excuse is submitted to the jury as a justiciable issue it is not necessary to submit all parts of the definition unless the evidence justifies submission in that manner. For cases where the court did not submit all four definitions (or excuses) see Oakes v. Peter Pan Bakers, Inc., 258 Iowa 447, 138 N.W.2d 93; Peters v. Rieck, 257 Iowa 12, 131 N.W.2d 529; McCoy v. Miller, 257 Iowa 1151, 136 N.W.2d 332; Gibbs v. Wilmeth, supra.

Here defendant suggests no facts or theories to substantiate submission of parts 1, 2 or 4 and we find none. Legal excuse, if it applies to this case, applies only because of the claimed sudden emergency. Omission of the irrelevant parts of the definition of legal excuse was not error. For a discussion of the difference between legal excuse and sudden emergency see

Yost v. Miner, Iowa, 163 N.W.2d 557 (opinion filed December 10, 1968).

■ IV. Nor are we convinced the court's statement at the end of the instruction: "This instruction applies to the plaintiff and to the defendant-driver in this action", constituted error. Both drivers were familiar with the intersection, both knew they were in heavy traffic at an electrically-controlled intersection, both knew the offset feature of the intersection and both knew traffic going north on 8th Street might have to slow for traffic coming out of Washington Avenue. If knowledge of the likelihood of necessity for sudden decrease in speed was chargeable to one it was also chargeable to the other. The situation was the same for both parties. We note a legal excuse instruction was applied to both parties under the facts presented in Oakes v. Peter Pan Bakers, supra, loc. cit. 138 N.W.2d at page 100.

The situation was not unlike that found in Tisserat v. Peters, 251 Iowa 250, 253, 99 N.W.2d 924, 926 where we said: "It is obvious that if the court had given the instruction as requested, it would then have been necessary to give a corresponding instruction as to the duties of plaintiff, as he was fully aware of decedent's affliction. *This merely in the interest of fair play.*" (Emphasis added.)

■ V. Failure of plaintiff to plead legal excuse and sudden emergency is not determinative. The issues need not be pled to be submissible. Stevenson v. Abbott, 251 Iowa 110, 99 N.W.2d 429; Miller v. Griffith, 246 Iowa 476, 66 N.W.2d 505.

■ VI. The court should have tailored the instruction to the facts of the case as mandated by Gibbs v. Wilmeth, supra, but such failure constituted harmless error where, as here, the instruction should not have been given, the abstract statements of law were correct and the only valid basis for attack on the instruction was failure to mention the factual situation.

The trial court in ruling on the motion for new trial said he may have erred in giving any instruction on legal excuse or sudden emergency but held the error, if any, was not prejudicial to defendant. We agree.

■ Defendant pled both legal excuse and sudden emergency. We think it correct to assume the instructions in this area were given in the first instance because defendants raised the issues. Our review of the record convinces us the instructions should not have been given. We note Overturf v. Bertrand, 256 Iowa 596, 604, 605, 606, 128 N.W.2d 182, 187 which also involved a rear-end collision at a stop light-controlled intersection. Much of what we said there, including citations, is relevant here: "* * * In Young v. Hendricks, 226 Iowa 211, 215, 283 N.W. 895, 898, we said: 'An emergency has been variously defined as (1) an unforeseen combination of circumstances which calls for immediate action; (2) a perplexing contingency or complication of circumstances; (3) a sudden or unexpected occasion for action; exigency; pressing necessity.'

■ "We have stated many times there is an emergency in every collision of motor vehicles. But the emergency which excuses a violation of a statute must be one to which the violator did not contribute; it must be one 'not of his own making'. Wachter v. McCuen, 250 Iowa 820, 827, 96 N.W.2d 597, 600, and citations; Mass v. Mesic [256 Iowa 252, 127 N.W.2d 99], supra.

■ "Defendant had formerly worked near this intersection. He was familiar with 'the location of the various things around there'. The traffic light changes followed by the stopping or changing of the traffic flow near and through the intersection were not unexpected or unforeseen by him. In fact, it was his duty to anticipate such changes as he approached the intersection. * * *

"In Harris v. Clark, 251 Iowa 807, 815, 103 N.W.2d 215, 220, we said:

" 'In the cases denying the benefit of the emergency rule the party claiming the benefit has either had actual knowledge of a dangerous situation or in the exercise of reasonable care could have had such knowledge in time to act in relation thereto.'

"Defendant relies heavily on Harris v. Clark, supra, where defendant's station wagon struck the rear of plaintiff's vehicle as it stopped to allow an automobile preceding plaintiff to turn right into a private driveway. It is not factually in point. The accident in Harris v. Clark happened between intersections where defendant had no actual knowledge of any dangerous condition or reason to anticipate plaintiff would stop suddenly. He was not aware of the car ahead which was attempting to turn. Defendant here had actual knowledge of the dangerous situation as he approached the intersection closely following plaintiff's vehicle without reducing his speed. His own failure to exercise reasonable care under the circumstances contributed to the cause of the emergency."

In Harris v. Clark, supra, we held the trial court properly refused to instruct on legal excuse. In this case the trial court should also have refused to instruct on legal excuse but having done so the error cannot be said to be prejudicial to defendant. In Dorcas v. Aikman, 259 Iowa 63, 143 N.W.2d 396, 402 we said: "We hold the doctrine of res ipsa loquitur should not have been submitted to the jury under the facts of this case. We therefore need not consider plaintiff's attack on instruction 9 as no prejudice could result to plaintiff therefrom." Cf. Robbins v. Weed, 187 Iowa 64, 169 N.W. 773.

■ VII. Defendants' testimony is entirely reproduced in question and answer form in the record with the notation that the form used is at the insistence of plaintiff. There is no justification for such palpable violation of rule 340(d), (g), Rules of Civil Procedure. Since plaintiff prevails in this case costs are assessed to defendant except $25 of the cost of printing the record which is assessed to plaintiff.

Affirmed.

All Justices concur.