**John VANDERHEIDEN, d/b/a Vanderheiden Storage & Transfer, Appellee,**

v.

**CLEARFIELD TRUCK RENTALS, INC., et al., Appellants.**

**No. 55585.**

Supreme Court of Iowa.

Sept. 19, 1973.

Richard G. Langdon, Herrick, Langdon, Belin & Harris, and Robert O. Barnes, Des Moines, for appellants.

Leighton A. Wederath, Carroll, and Clyde Putnam, Jr., Putnam, Putnam & Putnam, Des Moines, for appellee.

HARRIS, Justice.

Defendant appeals from a verdict for plaintiff in a truck accident case. The appeal centers around instructions to the jury. We reverse and remand for a new trial.

Plaintiff's evidence showed that about 9:27 p.m. January 21, 1969 Kenneth Wright was driving plaintiff's truck and trailer east on Interstate # 80. It was a foggy night and Wright was experiencing

some electrical difficulties as he approached the What Cheer exit. A patrolman stopped him to advise him his lights were getting dim. He did not receive a ticket but did intend to follow the officer's advice to have his lights checked at the exit, a quarter mile away.

When stopped by the officer, Wright had pulled the truck off on the south shoulder. Rather than travel along the shoulder to the exit Wright elected to return to the traveled south eastbound lane. He first traveled 100 to 150 feet along the shoulder when another eastbound truck passed him. From the time he left his parked position his left turn signal was on. Wright observed the area behind him only through his rearview mirrors which he continued to use after the first truck had passed him. Seeing no further traffic to his rear, Wright started to pull onto the highway. Only after he had entered upon the highway did he see headlights of defendant's truck, also eastbound, about a quarter mile to his rear. When Wright realized defendant's truck was not going to pass in the other eastbound lane to his left he tried to pull back onto the shoulder. He was unable to do so in time to avoid the accident.

Enoch Simcox testified he drove defendant's truck east on the interstate and observed the truck preceding him pass plaintiff's vehicle on the shoulder 200 feet ahead. Then Simcox reached for cigarettes on the seat beside him. This took only about a second, but when he again looked ahead he saw Wright had driven from the shoulder onto the traveled portion of the highway. Plaintiff's truck was then not more than a tractor-trailer length ahead of him. It was too late to avoid the accident.

Defendant's assignments all relate to instructions given or refused.

I. The trial court refused defendant's request to submit the issue of sudden emergency. The jury might well have pondered the question of whether a sudden emergency was shown. Had they concluded a sudden emergency existed they might well have determined it was of defendant's own making. We believe these matters were for the jury to determine as a matter of fact, not for the court to determine as a matter of law.

A definition of sudden emergency we have approved many times appears in Young v. Hendricks, 226 Iowa 211, 215, 283 N.W. 895, 898:

"An emergency has been variously defined as (1) an unforeseen combination of circumstances which calls for immediate action; (2) a perplexing contingency or complication of circumstances; (3) a sudden or unexpected occasion for action; exigency; pressing necessity." See also Overturf v. Bertrand, 256 Iowa 596, 128 N. W.2d 182.

"We have stated many times there is an emergency in every collision of motor vehicles. But the emergency which excuses a violation of a statute must be one to which the violator did not contribute; it must be one 'not of his own making.' (Citations)." Overturf v. Bertrand, supra, 256 Iowa at 605, 128 N.W.2d at 187.

"Of course one who claims excuse on the ground of sudden emergency not created by his own act has the burden to prove it. (Citations)." Overturf v. Bertrand, supra, 256 Iowa at 605, 128 N.W.2d at 187. Taking defendant's version of the events leading up to the collision we believe a jury question was made on sudden emergency and conclude the court erred in denying defendant's request for an instruction on the doctrine. We have held similar factual claims presented a jury question. Goman v. Benedik, 253 Iowa 719, 113 N.W.2d 738; Karr v. Samuelson, Inc., 176 N.W.2d 204 (Iowa 1970).

It is argued any emergency was the making of the party claiming it. Plaintiff insists defendant's driver contributed to the emergency by his act of diverting his eyes

from the road when he reached for cigarettes. While it might be argued this diversion was negligence which could have contributed to the accident it does not necessarily follow it was a factor in bringing about the emergency. The emergency claimed was the sudden entry of plaintiff's truck upon the highway. A jury question was presented on the issue of sudden emergency. It was error to refuse to instruct on the doctrine.

■ II. The trial court instructed the jury on the general duty of both parties to keep a proper lookout. It refused defendant's request to expand the instruction to specify that the duty " * * * may involve the duty of lookout to the rear." The following language from Lovely v. Ewing, 183 N.W.2d 682, 684 (Iowa 1971) is controlling:

"Defendant requested that the court include in the instruction on plaintiff's duty a statement concerning lookout to the rear. This, of course, was the crucial issue in the case. * * *.

"We believe the matter of plaintiff's duty to maintain lookout to the rear was in the case. Our question, then, is whether this issue was sufficiently presented to the jury under the instruction given by the court. We do not believe it was. We have often said instructions should fairly and completely present the jury with those issues they are to decide. We have also said instructions are the jury's only source of guidance for the correct application of the law to the facts. Another well established rule is that instructions should not be couched in abstract language but should be related to the facts of the particular case. (Citations).

" * * *.

"We do not believe it can be fairly said the bare abstract statement on lookout given by the court properly instructed the jury on the nature and extent of that duty with reference to the necessity of making some observation to the rear before coming to a sudden stop. We are convinced defendant was entitled to such an instruction and that refusal to give it was reversible error." See also Cavanaugh v. Jepson, 167 N.W.2d 616 (Iowa 1969) ; Duffy v. Harden, 179 N.W.2d 496 (Iowa 1970).

■ III. Defendant claimed plaintiff's driver was negligent in failing to yield the right of way to defendant's truck as it was proceeding on the traveled portion of the highway. The trial court rightly rejected this claim as a separate specification of negligence.

The plaintiff was not shown to have entered a highway intersection under section 321.321, The Code. Neither was it claimed the plaintiff was undertaking to change from a lane marked for traffic under section 321.306. There was a separate claim the plaintiff violated section 321.313: "No person shall start a vehicle which is stopped, standing, or parked unless and until such movement can be made with reasonable safety." This duty was covered in a separate instruction.

Defendant cites earlier cases, principally Hunter v. Irwin, 220 Iowa 693, 263 N.W. 34 for the proposition a driver must stop and yield the right of way when entering a highway from a private drive. This duty arose under section 5035 of the 1931 Code which was a directional right of way statute. At the time the section contained a provision, no longer in existence, which made specific reference to vehicles "coming from alleys and private drives." The case is not in point.

■ IV. Defendant urged the plaintiff was negligent for failure to have adequate lighting on his vehicle. The trial court refused to submit this claim as a specification of plaintiff's negligence. We hold the trial court was right in its refusal.

Patrolman Driscoll, who stopped Wright to advise him the lights were growing dim, testified the lights were visible 500 to 600 feet. There was no evidence of violation of section 321.387, The Code, which pro-

vides: "Every motor vehicle * * * shall be equipped with a lighted * * * red light plainly visible from a distance of five hundred feet to the rear."

V. Plaintiff claimed defendant driver was negligent in failing to drive his truck at a speed which would allow him to stop within the assured-clear-distance ahead as required in section 321.285, The Code. Defendant's final assignment of error is the submission of this issue to the jury. Citing Plummer v. Loonan, 189 N. W.2d 617 (Iowa 1971) defendant argues the doctrine is inapplicable where one motorist turns into the path of another. See also Coppola v. Jameson, 200 N.W.2d 877 (Iowa 1972). In Coppola we approved the following authority:

"The assured-clear-distance rule is not applied where there are extraordinary or disconcerting circumstances affecting the operator's judgment and actions, as where the motorist is confronted with a sudden emergency not of his making or where the motorist encounters a dangerous situation which in the exercise of reasonable care he had no reason to expect. So, a sudden and unexpected entry of a person, motor vehicle, or other object into the path of travel will take the case out of the assured-clear distance statute or rule. * * *." (Footnotes omitted) 60A C.J.S. Motor Vehicles § 293(2)b at page 208–209. Under this authority the doctrine of assured-clear-distance ahead would be inapplicable under defendant's version of the accident. However plaintiff's version differs in an important respect. According to plaintiff, his vehicle did not suddenly and unexpectedly enter the path of defendant's travel. The doctrine was applicable under plaintiff's version. It was accordingly proper to submit the issue to the jury, telling them to apply it only if they accepted plaintiff's version.

By reason of the errors mentioned in divisions I and II the case must be remanded for a new trial.

Reversed and remanded.

All Justices concur, except MOORE, C. J., and RAWLINGS and LeGRAND, JJ., who concur specially.

MOORE, Chief Justice (concurring specially).

I respectfully dissent from division I of the majority opinion but agree with division II and a reversal.

We have frequently said a defendant may offer evidence of a legal excuse for his violation of the rules of the road as charged by plaintiff. In our polestar case of Kisling v. Thierman, 214 Iowa 911, 916, 243 N.W. 552, 554, we said: "By the term 'legal excuse' is meant: * * *. 3. Where the driver of the car is confronted by an emergency not of his own making, and by reason thereof he fails to obey the statute. * * *."

Since Kisling in numerous cases we have reviewed the necessary elements of "not of his own making." These rules are now firmly established. One who claims excuse on the ground of sudden emergency not created by his own act has the burden to prove it. It is not upon plaintiff to disprove it. Erickson v. Thompson, 257 Iowa 781, 789, 135 N.W.2d 107, 112, and citations. There is an emergency in every collision of motor vehicles. But the emergency which excuses a violation of a statute must be one to which the violator did not contribute; it must be one "not of his own making." Baker v. Wolfe, Iowa, 164 N. W.2d 835, 839, and citations. In Rice v. McDonald, 258 Iowa 372, 380, 138 N.W.2d 889, 894, we said: "It is well settled that a person is not entitled to the benefit of the emergency rule if it clearly appears he either had actual knowledge of a dangerous situation or in the exercise of reasonable care could have such knowledge in time to act in relation thereto."

Each case must stand upon its own facts. There must be substantial evidence of a sudden emergency. A scintilla of evidence is not enough to create a jury question as to the existence of such an emergency.

Mass v. Mesic, 256 Iowa 252, 254, 127 N. W.2d 99, 101 and citations.

Simcox, defendant's driver, testified he saw the lights of plaintiff's tractor-trailer when he was between 200 and 300 feet from it; he could have stopped his vehicle within 100 feet; he reached for his cigarettes on the seat beside him; when he again looked ahead, plaintiff's vehicle had driven from the shoulder onto the south lane of the highway; plaintiff's vehicle was not then more than a tractor-trailer length ahead of him and it was too late to avoid the accident.

The record is clear and undisputed that defendant's driver diverted his attention from the highway for such a period of time that plaintiff's large, loaded tractor-trailer moved from its position on the shoulder of the road onto the south lane of the divided highway and was moving in an easterly direction when defendant's driver discovered he was faced with an emergency. That emergency was, at least in considerable part, of his own making.

In Karr v. Samuelson, Inc., Iowa, 176 N.W.2d 204, cited in the majority opinion, there was evidence defendant's vehicle emerged suddenly from a farm field and that plaintiff immediately applied his brakes in an effort to avoid the collision. Defendant made no contention the court erred in giving a sudden emergency instruction. Karr is readily factually distinguishable from the case at bar.

Goman v. Benedik, 253 Iowa 719, 113 N.W.2d 738, cited by the majority, does not involve an assigned error that a sudden emergency instruction should not have been given. In Goman, after plaintiff truck driver had sounded his horn, defendant suddenly drove her Plymouth car from the shoulder onto the pavement in the path of the truck when it was so close a collision could not be avoided. Goman also is readily factually distinguishable from the case at bar.

Under the record here I would hold a jury question was not engendered on the issue of sudden emergency. Strong support for such a holding is found in Baker v. Wolfe, Iowa, 164 N.W.2d 835; Erickson v. Thompson, 257 Iowa 781, 135 N.W.2d 107; Overturf v. Bertrand, 256 Iowa 596, 128 N.W.2d 182; Mass v. Mesic, 256 Iowa 252, 127 N.W.2d 99; Wachter v. McCuen, 250 Iowa 820, 96 N.W.2d 597.

RAWLINGS and LeGRAND, JJ., join in this special concurrence.