No. 47,340

CAROL HALLETT, *Appellant,* v. LENORA STONE and STONE SAND COMPANY, *Appellees.*

(534 P. 2d 232)

Opinion filed April 5, 1975.

*Edwin P. Carpenter,* of Topeka, argued the cause, and *Lee Turner,* of Turner, Chartered, of Great Bend, and *Raymond L. Dahlberg,* of the same firm, were with him on the brief for the appellant.

*Thomas J. Berscheidt,* of Hampton & Ward, of Great Bend, argued the cause, and *Jerry M. Ward,* of the same firm, was with him on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal in an action for damages resulting from an automobile collision wherein Mrs. Lenora Stone (defendant-appellee), while in the course of her employment with Stone Sand Company (defendant-appellee), collided with the rear of an automobile driven by and belonging to Mrs. Carol Hallett (plaintiff-appellant). The suit was tried in the Barton County District Court before a jury which returned a general verdict in favor of the defendants.

The points presented on appeal pertain to the giving of instructions, and the overruling of the plaintiff's motion for judgment notwithstanding the verdict.

The testimony of Mrs. Hallett and Mrs. Stone establish the material facts relevant to this appeal.

The accident occurred on June 8, 1971, in Great Bend, Kansas, in the 600 block of Washington Avenue approximately 123 feet south of Seventh Street. A railroad track apparently crosses Washington just north of the Seventh Street intersection. The plaintiff was driving south on Washington Street in her 1970 Chevrolet station wagon about 30 m. p. h. and followed approximately one and one-half car lengths behind a third vehicle. The defendant Stone, who was driving a 1966 Mercury station wagon, followed approximately one-half block behind the plantiff and was traveling 30 m. p. h.

The plaintiff testified the third vehicle (whose driver was not

a party in the lawsuit) which preceded her made an abrupt left turn without using "blinker lights or anything" into an alley located between Seventh and Sixth Streets. On direct examination the plaintiff testified that when the third vehicle suddenly turned left, she applied her brakes in order to keep from hitting the third vehicle, but that her tires did not skid and she did not hear any screeching of tires before she was struck from the rear by the vehicle driven by the defendant Stone. The plaintiff also stated she had not been aware that the defendant Stone's vehicle was behind her. According to the plaintiff and her husband, there was nothing wrong with their vehicle on the day of the collision and the brake lights were working.

On cross-examination portions of a prior deposition were brought out wherein the plaintiff stated that when the third vehicle turned left there was no room for her to pass on the right because of high curbing, so she had to put on her brakes to avoid hitting the third vehicle and in the process her car skidded.

The plaintiff further stated her car had come to a stop and was standing still when she was struck from the rear by the Stone vehicle, and also that she heard the tires squeal on the Stone vehicle before the collision. The plaintiff stated in her deposition her vehicle was still sliding when the third vehicle was turning left, and that she slid past the point where the third vehicle began its turn.

The defendant Stone testified that on the date of the accident she was employed as an office manager and bookkeeper for the Stone Sand Company, and at the time of the collision she was returning from the post office where she had picked up the company mail. The defendant Stone said that as she approached the scene of the accident she was traveling about 30 m. p. h. and trailed the appellant, who was moving about the same speed, about one-half of a block. The defendant Stone further stated that after she crossed the railroad tracks and while she was crossing Seventh Street she noticed the plaintiff's automobile was stopped. The defendant Stone did not observe the plaintiff's vehicle decelerate from 30 m. p. h. to a stopped position, and she did not see any tail lights or arm signal indicating the plaintiff's vehicle was stopping. After realizing the plaintiff's car was stopped, the defendent Stone hit the brakes but was unable to stop before striking the plantiff's vehicle. The defendant Stone could not avoid colliding with the plaintiff's vehicle by turning to the right because of the curb along Washington Street. The defend-

ant Stone further testified there was no obstruction to visibility between her vehicle and the plaintiff's vehicle.

After due deliberation the jury returned a verdict in favor of the defendants. Post trial motions were overruled and appeal has been duly perfected by the plaintiff from a judgment entered on the verdict. We shall continue to refer to the parties to the accident as plaintiff and defendant Stone.

Over the plaintiff's objection the trial court instructed the jury that:

"The driver of a vehicle has a duty to keep a lookout to the rear when the movement of his vehicle may affect the operation of a vehicle to the rear."

The foregoing instruction is taken from P. I. K. [Civil] 8.03B. The appellant assigns the giving of the instruction to the jury as reversible error.

The trial court gave P. I. K. [Civil] 8.03A as instruction to the jury, which states:

"It is the duty of the driver of a motor vehicle on a public highway to keep a proper lookout for vehicles and objects in his line of vision which may affect his use of the highway.

"The law presumes that a driver will see those things which a person would and could see in the exercise of ordinary care under like or similar circumstances."

The authors of P. I. K. state on page 156, Notes on Use, that P. I. K. 8.03A should be given in virtually all automobile negligence cases as part of the common law duty of a driver, and that it covers those situations requiring lookout ahead and laterally. The authors also state that P. I. K. 8.03B should be given, along with P. I. K. 8.03A, in those cases involving the duty of a driver to lookout to the rear.

Kansas does not have a specific "lookout to the rear statute," and counsel for the respective parties have cited this court to no Kansas cases on the point.

The pattern instruction set forth in P. I. K. 8.03B relies upon 1 Blashfield Cyclopedia of Automobile Law and Practice, § 685 (1948), wherein it is stated:

"The duty of a driver to look ahead is paramount, though he must use reasonable care to ascertain whether cars are coming behind *if intending to change his course. . . ."* (Emphasis added.)

In the more recent edition, the counterpart of this section states at 2 Blashfield Automobile Law and Practice, § 104.7 (3rd Ed. 1965):

"A motorist does not have the duty, under all circumstances, to keep a lookout to the rear, since he is entitled to rely on the exercise of ordinary care by those approaching from the rear. He may be required to maintain a lookout for a vehicle approaching from the rear when the presence of such vehicle is known, or *if he is intending to change his course*. . . ." (Emphasis added.)

In *Vanderheiden v. Clearfield Truck Rentals, Inc.*, 210 N. W. 2d 527 (Iowa, 1973), the Supreme Court of Iowa had before it a factual situation in which the plaintiff pulled from the shoulder of the road into the lane of traffic and into the path of the defendant, who was driving a truck. The defendant's attention was momentarily diverted while locating a cigarette and he did not observe the plaintiff drive into his lane of traffic. When he did notice the plaintiff it was too late to avoid the resulting rear-end collision. The court held the defendant's requested instruction concerning the plaintiff's duty to lookout to the rear, before pulling into the lane of traffic, should have been given to the jury and that its refusal to give the instruction was reversible error.

We hasten to add that reference to the *Vanderheiden* case should not be construed as an implied approval by this court of the cases cited by the Iowa Supreme Court therein.

The instruction in this case has no support in the evidence. The plaintiff did not execute the type of maneuver under which the duty arises. There is absolutely nothing in the evidence to indicate the plaintiff had any opportunity to look to the rear. Neither does the evidence suggest that the exercise of due care required such lookout. The plaintiff was forced to stop because of an illegal left turn by the driver in front of her. She could not turn aside to avoid the collision because of a high curb, and she had her vehicle under such control as to stop it within the range of her vision to avoid striking such vehicle. The defendant Stone following one-half block behind in her vehicle, with an unobstructed view, was in a position to observe the entire situation confronting the plaintiff.

As given in this case the instruction would place a burden on drivers to keep a lookout to the rear at all times, which clearly is not the law. On the facts in this case the instruction is not in accordance with the primary duty of a driver to maintain a lookout ahead, and the right of every motorist to rely on the exercise of ordinary care by the driver behind him.

Even if it be assumed the plaintiff failed to keep a proper lookout to the rear, that fact played no part whatsoever in causing the accident. Had she been fully aware of defendant Stone's presence, the

plaintiff could not have acted differently. Moreover, since the defendant Stone was a half block behind the plaintiff, the plaintiff could assume the defendant Stone would exercise ordinary care and come to a stop. If there was any negligence in this regard, it could not have been a proximate cause of the accident. It was not a proper issue in the case to be submitted to the jury by an instruction.

The prejudicial effect of the instruction is apparent. The impression given the jury by the instruction was that the plaintiff had the same duty to keep a lookout to the rear for the defendant Stone, as the defendant Stone had to keep a lookout to the front for the plaintiff. This would lead to the conclusion that the plaintiff was equally responsible for the accident, and thus contributorily negligent. The instruction suggests to the jury that the plaintiff was negligent in not looking to the rear before stopping, even in these extreme circumstances. In our opinion the giving of the "lookout to the rear" instruction was prejudicial to the plaintiff.

The plaintiff next asserts as error the giving of instruction No. 3 which covers the method of giving signals. This instruction was taken verbatim from P. I. K. 8.26, which is simply a restatement of K. S. A. 1973 Supp. 8-549 (a) (b) (c). The substance of the instruction is that either hand signals or mechanical signals must be given when stopping or slowing suddenly.

Both the plaintiff and her husband testified that the brake lights on her vehicle were working and the car was only a year old. The only testimony given by the defendant Stone on the point was that she saw no signal. The defendant Stone's testimony does not go to the issue as to whether or not the signal was given. On the basis of her testimony the defendant Stone admits she failed to keep a proper lookout and did not see the signal. Her testimony is:

"Q. As you were headed south and approaching where the accident occurred you were aware, were you not, of Mrs. Hallet's car ahead of you proceeding in a southbound direction?

"A. Yes.

"Q. And she was going what, around 30 miles an hour?

"A. That is what she said.

"Q. Now, I think you indicated that when you first noticed her you were about a half a block behind her?

"A. When I first noted her you say?

"Q. Yes, noticed her car.

"A. Yes, somewhere in there, a half a block.

"Q. And you were proceeding about 30 miles an hour yourself at that time?

"A. Yes.

"Q. Now, as you approached the area where the accident occurred as I understand it she was proceeding at 30 miles an hour, the last you noticed her, and the next time you saw her she was stopped?

"A. That·was the point that I originally said. I don't know whether she was stopped or not.

"Q. Let's go through what your testimony was about this point in your deposition, if we may. At page 11 I asked you this series of questions starting at line 18: 'Q. —Well, she stopped you say? A. —Well, I seen the car had stopped, but there was no brake lights whatsoever. Q. —Her car had stopped? A. —That's right. Q. —How far — When you saw her car had stopped or was stopping, how far to the north of her car were you when you first noticed it? A. —This is the point I have argued with myself, how far I was from her when I actually decided she had stopped. Q. —Did you see her slowing down? A. —No. Q. —She had been going thirty? A. —This is true. Q. —The next thing you noticed she was stopped? A. —That's right. Q. —You never saw anything in between? A. —No.' That is the way your testimony was at that time, was it not?

"A. True, but at the time of the deposition I still didn't know some of these answers."

\* \* \* \* \*

". . . 'Q. —Well, what are you saying, you had seen her car before that because you had been following it? A. —That's right. Q. —You don't know what distracted your attention during the time that she decreased her speed from 30 miles per hour until the time she stopped, that interval except that you didn't notice it? A. —Now, what was that again? Q. —You never saw her stop, you just saw her stopped? A. —This is true; I never saw her stop. . . .' "

\* \* \* \* \*

"Q. Tell the Court and jury if you were driving and keeping a proper lookout can you see a car slowing down ahead of you ordinarily?

"A. Yes."

The foregoing testimony was given by the defendant Stone in her direct testimony as a witness called by the plaintiff. On redirect examination the defendant Stone testified:

"Q. Mrs. Stone, first of all, the car that was ahead of her that made a left turn, Mrs. Hallett did not hit it, did she?

"A. No.

"Q. Apparently she saw and reacted and stopped without hitting it?

"A. The car turned left out of her way.

"Q.. You don't know whether it turned out of her way or whether she stopped at that point because you didn't see those events happen?

"A. I did not see them, she told me the car turned out of the way.

"Q. You told the Court and jury that as far as Mrs. Hallett is concerned you were half a block behind her and you were going 30 and she was going 30?

"A. Yes.

"Q. And then are you saying that the next time you noticed her that you can recall instead of being a half a block behind you were going 30 and she was going 30 and she was stopped or practically stopped, is that the sum and substance of it?

"A. Yes.

"Q. What I am getting to is this, you are telling the Court and jury that you were driving down Washington in broad daylight and you never saw her car as it slowed down or decelerated from a speed of 30 miles an hour down through 20, 15, 10, or 5 miles an hour to where it was practically stopped, did you?

"A. I guess not.

"Q. So what you are saying is back here you see it at 30 miles an hour, the next time you see it in your line of vision it is down here stopped, is that right?

"A. I guess.

"Q. Mrs. Stone, was there any obstruction to visibility between you and Mrs. Hallett's car?

"A. No."

The foregoing must be construed as an admission by the defendant Stone that she was not keeping a proper lookout where her vision to the front of her on the street she was traveling was unobstructed; that she was following the plaintiff's vehicle one-half block behind and never saw the plaintiff stop her vehicle, or the situation confronting the plaintiff on the street, and that when she first saw the plaintiff's vehicle stopped it was too late to avoid the accident.

This court has frequently recognized that admissions made by a party are the strongest kind of evidence. The proposition of law to be applied under these circumstances has been stated as follows: A verdict cannot be upset if there is any evidence in the record to support it, where such issue is clearly presented without complicating factors, but such rule yields to the impact of admissions made by a party in his testimony while a witness in the case, and such admissions are binding and conclusive upon him if uncontradicted or unexplained, whether such admissions are elicited on direct examination or on cross-examination of the party. (*Hiniger v. Judy,* 194 Kan. 155, 398 P. 2d 305; *Reeder v. Guaranteed Foods, Inc.,* 194 Kan. 386, 399 P. 2d 822; *Bellport v. Harder,* 196 Kan. 294, 411 P. 2d 725; and *Schoof v. Byrd,* 197 Kan. 38, 415 P. 2d 384.)

The only conclusion to be drawn from the defendant Stone's admission is that no matter what kind of signal the plaintiff may or may not have given, the defendant Stone would not have seen it. The last time the defendant Stone looked the plaintiff was going 30 m. p. h. one-half block ahead of her, and when the defendant Stone

looked again the plaintiff had already stopped. Even if it be assumed there was a failure to give a proper signal, such negligence on the plaintiff's part could not have been a proximate cause of the accident. It was not a "substantial factor" in bringing about the harm. (*Haggard v. Lowden,* 156 Kan. 522, 134 P. 2d 676.) Neither was it an act without which the injury would not have occurred. (*Gard v. Sherwood Construction Co.,* 194 Kan. 541, 400 P. 2d 955 and *Stevenson v. City of Kansas City,* 187 Kan. 705, 360 P. 2d 1.) This accident would have occurred regardless of the signal given by the plaintiff. In *Curtiss v. Fahle,* 157 Kan. 226, 139 P. 2d 827 this court said:

"Where the sudden decrease in the speed of a vehicle is actually observed without a signal, the party observing the decrease in speed has the same notice a signal would have imported if given at that time, and the absence of a signal cannot be said to have been the proximate cause of the collision." (Syl. ¶ 2.)

In the case at bar the defendant Stone testified, when she first observed the plantiff's vehicle it was already stopped, but with no brake light on. At the time the defendant Stone observed the plaintiff's vehicle she was fully aware that the plaintiff's vehicle was stopped. She had the same notice a signal would have imported.

Cases holding that the failure to give the required signal of intention to stop cannot be the proximate cause of a rear-end collision, where for various reasons the signal would not have been seen or heeded by the following driver if given, are collected in an annotation in 29 A. L. R. 2d 5, 77.

Even assuming the plaintiff negligently failed to give a proper signal of her intention to stop in the instant case, such failure could not have been a proximate cause of the collision, and instruction No. 23 should not have been given.

The plaintiff next contends the trial court erred in giving the "sudden emergency" instruction (P. I. K. 8.81).

The trial court in its memorandum opinion expressed the belief that it was not shown conclusively the defendant Stone brought on the emergency, and if she did, the jury in the last sentence of the instruction was told such person cannot avail himself of the emergency doctrine.

The emergency instruction states that a person confronted with an "emergency" is not held to the same standard of care that he would be required to exercise had he time for reflection. Under such circumstances he is required to exercise such care as an ordi-

nary person would exercise when confronted by a like emergency under circumstances then existing. The rule of sudden emergency cannot be invoked by a person who brought the emergency upon himself by his wrong or did not use ordinary care to avoid it. (*Gardner v. Welk*, 193 Kan. 445, 393 P. 2d 1019.)

If the defendant Stone was confronted with an emergency, it was of her own making. By her own admission she did not see the plaintiff's vehicle until after the plaintiff had slowed and stopped, and although she had been following a half block behind, she was unable to stop before colliding with the plaintiff's vehicle. The admitted negligence of the defendant Stone preceded and created the situation she faced.

This court has heretofore questioned the giving of the emergency instruction in *Mesecher v. Cropp*, 213 Kan. 695, 518 P. 2d 504. The recent decisions of this court were analyzed therein and the propriety of giving of the emergency instruction was fully discussed. For the reasons stated therein we conclude the giving of the emergency instruction on the facts presented by the record herein was erroneous. (See the comment in P. I. K. 8.81, 1975 Supplement.)

The final point asserted by the plaintiff is that the trial court erred in overruling her motion for judgment notwithstanding the verdict.

The propriety of granting or denying a motion for a judgment notwithstanding the verdict is tested by the same rule on appeal as in the trial court. The trial court is required to view the evidence and inferences therefrom most favorable to the party against whom the motion is made. The appellate court must do the same. (*Fisher v. Sears, Roebuck & Co.*, 207 Kan. 493, 498 P. 2d 1309, and cases cited therein.)

In *Jarboe v. Pine*, 189 Kan. 44, 366 P. 2d 783, the court stated:

". . . [The driver of a motor vehicle] has a duty to look ahead and see what there may be within his view which may affect his use of such street or highway and to keep a lookout for other users of such street or highway, and he is in law presumed to have seen and heard that which he could have seen and heard had he kept a proper lookout and exercised ordinary care and caution. His failure to use that degree of care and caution which an ordinarily careful and prudent person would exercise under the same or similar circumstances is negligence as a matter of law. . . ." (pp. 50, 51.)

Under the foregoing rule and the evidence in this case the defendant Stone has admitted negligence by failing to maintain a proper lookout and no mitigating circumstances were disclosed for

that failure. As a matter of law, this constitutes negligence which is a proximate cause of the collision.

The only remaining question to be determined is whether the plaintiff's conduct as disclosed by the evidence would support a finding by the jury of contributory negligence.

According to the evidence in the case the plaintiff was following about one and one-half car lengths behind another vehicle which suddenly and without warning made a left turn into an alley. The plaintiff reacted quickly and came to a stop, avoiding a collision with that vehicle. She then heard the defendant Stone's tires squealing and was struck from the rear. We have already discussed the subject of the failure of the plaintiff to give a proper signal and the failure to keep a lookout to the rear, and have concluded the plaintiff was not negligent in these respects, but, even if she were, such negligence could not have been the proximate cause of the collision. It could not be successfully argued the plaintiff was negligent merely in stopping to avoid an accident. The only possible theory upon which the plaintiff could be held to be negligent is in following the vehicle in front of her too closely.

K. S. A. 8-543 (a) provides that a driver "shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway." It is a well established rule that a driver must operate his vehicle so that he can safely stop within the distance he can clearly see vehicular traffic ahead of him. (Hill v. Hill, 168 Kan. 639, 215 P. 2d 159; and see, Anno. 85 A. L. R. 2d 613, 621.) Here the plaintiff was clearly in full compliance with the rule.

In addition, a driver has the right to assume other drivers will exercise due care. (Carpenter v. Strimple, 190 Kan. 33, 39, 372 P. 2d 571.) Accordingly, a following driver has only to anticipate the normal exigencies of traffic and is not bound to anticipate unusual contingencies. (Anno. 85 A. L. R. 2d 613, 623.) Under normal conditions of city traffic moving at moderate speeds, the appellant was in control of her vehicle even in the unexpected situation which confronted her. She was able to safely stop without striking the vehicle in front of her. Upon this evidence we do not think reasonable minds could differ. They would have to find the plaintiff not guilty of contributory negligence.

Counsel for the appellees cite Johnston, Administratrix v. Ecord, 196 Kan. 521, 412 P. 2d 990, and quote from it extensively, to support their position that a jury question is presented by the evidence

in the case at bar. From our analysis of the evidence these cases can readily be distinguished. In *Ecord* the court said the "mere presence of a dog upon a through highway is not sufficient as a matter of law to relieve a motorist of all liability for consequences of whatever evasive action he may take in behalf of the dog, but rather that presents a question of fact for the jury to determine." (p. 528) There the decedent stopped abruptly for a dog while proceeding with his vehicle in the inside, or passing, lane of traffic on a through highway. The defendant was only fifty feet behind the decedent's vehicle changing over from the outside lane of traffic to the inside lane, looking in the rear view mirror for clearance of other traffic approaching from the rear, to avoid a stopped vehicle in the outside lane presumably attempting to turn off the highway at an exit ramp to the right. The situation created by the presence of the dog on the highway, which caused the decedent to stop his vehicle abruptly, was not ascertainable to the defendant who was proceeding in congested traffic. In the case at bar traffic conditions were not congested, the plaintiff was confronted with another vehicle making an illegal left turn in front of her, which created a situation readily ascertainable to the defendant Stone had she maintained a proper lookout while proceeding one-half block behind the plaintiff at the same speed as the plaintiff.

On the record presented in this case the only reasonable interpretation of the evidence is that the negligence of the defendant Stone was the sole and proximate cause of this collision. While the plaintiff acted with such care that she avoided colliding with the vehicle ahead of her, the appellee was so inattentive, she did not see the situation confronting the plaintiff and could not stop to avoid a collision with a vehicle that had been proceeding in the same direction one-half block ahead of her. Accordingly, the district court erred in overruling the plaintiff's motion for judgment notwithstanding the verdict.

The judgment of the lower court is reversed with directions to enter judgment for the plaintiff on the issue of liability and to try the issue on damages.

OWSLEY, J., dissenting: I am unable to agree with the conclusion of the majority opinion that reasonable minds might not differ as to the issue of contributory negligence. I do not differ with the court's conclusion that the case be returned for a new trial. Neither do I differ with the conclusion that defendant was guilty of negli-

gence as a matter of law. I agree the authorities cited in the opinion represent the law in this state, but I charge the majority with improperly applying that law to the facts in this case.

The majority of this court concludes the plaintiff was not contributorially negligent as a matter of law. Plaintiff testified she was driving south on Washington Street in Great Bend, Kansas, at about thirty miles per hour; that she was following another vehicle at a distance of one and one-half car lengths; that when the vehicle suddenly turned to the left in front of her without warning, she applied her brakes and came to a stop; and that defendant's car, traveling behind her, struck her vehicle in its stopped position. The majority reasons plaintiff was not negligent in stopping to avoid striking a turning vehicle, and that reasonable minds could not differ on the question of whether plaintiff was negligent in following the car in front of her too closely.

K. S. A. 8-543 (a) of the Kansas Uniform Act Regulating Traffic on Highways, provides that a driver "shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway." The majority opinion states that here the plaintiff was clearly in full compliance with this rule. I must disagree. The obvious purpose of 8-543 (a) is to prevent an accident when a leading vehicle stops or decreases its speed. A vehicle traveling at thirty miles per hour, as was plaintiff's car prior to the accident, requires approximately eighty-seven feet to come to a complete stop. (See, Kansas Driving Handbook, Prepared by Driver's License Examining Division of the Motor Vehicle Department [1970].) Following another vehicle at a length and a half, or at about twenty-four feet, while traveling at thirty miles per hour, could reasonably be determined to fall below the standard of "reasonable and prudent" required by the statute. In addition, the safety recommendations included in the above-mentioned handbook suggest that a following vehicle allow at least one car length for every ten miles per hour of speed. The same caution is contained in the Driver License Renewal Examination Handbook (1974), now being distributed to Kansas drivers. Accordingly, plaintiff should have been at least three car lengths from the leading vehicle. If she had been, this accident might never have occurred as the leading vehicle could possibly have cleared the highway before plaintiff reached the turning area, eliminating the necessity of bringing her vehicle to a stop in the street. Regardless of the weight attached

to the drivers' handbooks prepared by state agencies, the issue of following too closely should remain a jury question.

The majority reasons plaintiff was free of contributory negligence because she was required to stop her vehicle to avoid striking the turning vehicle in front of her. Applying this reasoning to the manner in which defendant was driving, it would follow that if defendant had been following plaintiff's vehicle as closely as plaintiff was following the vehicle in front of her, defendant could also be found free of negligence as a matter of law. The majority absolves a driver of negligence if she is following another vehicle closely enough to require a sudden stop to avoid striking a turning vehicle, and charges a driver with negligence when an ample distance is permitted to remain between her vehicle and the vehicle in front of her. The result is to penalize the driver for leaving ample distance between vehicles, and reward the driver who does not leave ample distance between vehicles. Unless logic is no longer a basis for the opinions of this court, the majority opinion is incorrect.

For many years this court has jealously guarded the right of a jury to determine questions relating to negligence. It is only when different minds can reasonably arrive at but one result that fact issues become questions of law justifying a court in substituting its judgment for the jury. (*Johnston, Administratrix v. Ecord,* 196 Kan. 521, 412 P. 2d 990.) This is not such a case.

KAUL, J., joins in the foregoing dissenting opinion.