No. 45,883

RONALD L. SMITH, *Appellant,* v. EDNA A. ENGEL, *Appellee.*

(477 P. 2d 937)

Opinion filed December 12, 1970.

*C. Bruce Works,* of Topeka, argued the cause and was on the brief for the appellant.

*Arthur E. Palmer,* of Goodell, Casey, Briman, Rice and Cogswell, of Topeka, argued the cause, and *Ernest J. Rice,* of the same firm was with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal in a damage action arising from personal injuries sustained in an automobile accident wherein the trial court granted the defendant's motion for summary judgment. The trial court held there was no evidence in the record presenting a genuine issue of fact as to the defendant appellee's negligence.

Ronald L. Smith (plaintiff-appellant) was a passenger in an automobile driven by Monte P. Bowen when it collided with a vehicle driven by Edna A. Engel (defendant-appellee). Bowen

was proceeding north in his automobile on U. S. Highway No. 75 south of Topeka, Kansas, on the 9th day of December, 1966, while Mrs. Engel was proceeding in the same direction ahead of the Bowen car. The accident occurred after 6 p. m. in an hour of darkness. Mrs. Engel had her headlights on, signalled with her blinker light for a left turn, and pulled her vehicle to a stop in the median strip on the highway. The Engel car had been stopped for twenty to thirty seconds waiting for oncoming traffic to clear before completing the left turn, when it was struck from the rear by the Bowen car.

Smith sued both drivers, Bowen and Engel, and after completing discovery both defendants filed motions for summary judgment. Both motions were sustained by the trial court, but Smith appeals to this court only from the summary judgment in favor of Mrs. Engel.

The appellant claims Mrs. Engel was negligent in not pulling clear off the roadway to turn left. He claims no other negligence on the part of Mrs. Engel.

Summary judgment may be entered as a matter of law for the moving party under K. S. A. 60-256 (c) if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.

In *Secrist v. Turley*, 196 Kan. 572, 412 P. 2d 976, upon which the appellant relies, the trial court sustained a motion for summary judgment and this court reversed, saying:

"The purpose of the rule is to obviate delay where there is no real issue of fact. It should do much to eliminate nuisance litigation and save time and expense. However, a summary judgment should never be granted for the single purpose of saving the time and expense of a trial, or be used for the purpose of depriving litigants of a jury trial. The manifest purpose of the rule is to eliminate sham claims which might otherwise cause needless and time consuming litigation.

"In the final analysis a court should not determine the factual issues on a motion for summary judgment but should search the record for the purpose of determining whether a factual issue exists. If there is a reasonable doubt as to the existence of a material fact a motion for summary judgment will not lie. No matter how the explanation of the rule is phrased we always return to the language of the rule, there must be left 'no genuine issue of any material fact.' " (p. 575.)

What constitutes a "genuine issue as to any material fact" appears to account for most of the voluminous opinions on the question.

It may be said an issue of fact is not genuine unless it has legal controlling force as to a controlling issue. A feigned or imaginary issue is not a genuine issue. A disputed question of fact which is immaterial to the issue does not preclude summary judgment. If the disputed fact, however resolved, could not affect the judgment, it does not present a genuine issue of a material fact. It has been said before summary judgment is granted the court must be convinced that the issue is not genuine or that there are only immaterial or imaginary factual issues. (See 3 Barron and Holtzoff, Federal Practice and Procedure, § 1231, *et seq.*, p. 94; and 3 Vernon's Kansas Statutes Annotated, Code of Civil Procedure, § 60-256, p. 358.)

K. S. A. 8-570 pertains to the stopping, standing or parking of motor vehicles outside of business or residence districts and reads in part as follows:

"(*a*) Upon any highway outside of a business or residence district no person shall *stop*, park, or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled part of the highway *when it is practical to stop*, park, or so leave *such vehicle off such part of said highway*, . . ." (Emphasis added.)

In applying the foregoing law to the facts, the appellant argues there was a genuine issue as to a material fact as to whether Mrs. Engel had sufficient space to remove her vehicle from the traveled portion of the roadway, and whether the rear of her vehicle extended onto the traveled portion of the roadway.

It may be conceded there is a conflict in the deposition testimony as to whether Mrs. Engel's automobile was either on or off the traveled portion of the roadway. But, viewing the deposition evidence before the trial court most favorably to the appellant (see *Brick v. City of Wichita,* 195 Kan. 206, 212, 403 P. 2d 964), the rear of her automobile extended onto the traveled portion of the roadway approximately two feet, and that it is possible a fourth of the car was extending back onto the roadway. In making the left turn Mrs. Engel in her deposition testified she pulled as far into the median strip as she could get before she stopped, waiting for the oncoming traffic to clear.

An uncontroverted fact appearing in the record is that the median strip on U. S. Highway No. 75 at the point in question is fourteen feet in width. It divides the traveled portions of the four-lane highway. The traveled portion of U. S. Highway No. 75 at

this point consists of two paved lanes for traffic proceeding in a northerly direction and two paved lanes for traffic proceeding in a southerly direction. The Engel car was at a crossover point in the median strip on U. S. Highway No. 75 where Mrs. Engel had a legal right to turn left.

There is a dispute in the deposition testimony of the witnesses presented to the trial court as to whether an automobile could or could not get completely off the traveled portion of the highway and into the median strip when making a left turn at the point in question. A passenger in Mrs. Engel's vehicle testified by deposition she thought she could get her Falcon within the median strip at the point in question, and there was other deposition testimony that if a vehicle stopped at an angle it could get within the median strip.

While the length of Mrs. Engel's vehicle is not indicated in the record, we think its actual length to be immaterial to the issue of negligence here presented. In our opinion it should make no difference whether the vehicle is a large American-made model or a small compact one. When a driver in the situation here presented pulls into the median strip at a crossover point as far as is practicable in making a left turn, the fact that a portion of the rear of the vehicle may extend onto the traveled portion of the traffic lane from which the turn is being made does not constitute negligence.

At the point on the highway in question it was legal for Mrs. Engel to make a left turn, and of necessity she was required to turn left from the inside lane of northbound traffic. In executing a left turn the driver must keep to the right so that an oncoming motorist could also make a left turn at the crossover point in the median strip. Under these circumstances the steering geometry of an automobile is such that a vehicle stopped for a left turn, as here, would not place the stopped vehicle at a right angle with the traveled lane of traffic from which the turn is made, but at an angle approaching ninety degrees. And although the angle may vary somewhat from one vehicle to another, the driver under these circumstances is not required to carefully manueuver his vehicle into the fourteen-foot median strip at an acute angle to the traveled lane from which the turn is made to place the vehicle completely within the median strip. This would not be practical, and the statute (8-570 [a], *supra*) merely requires the driver of a vehicle to stop off the main traveled part of the highway when it is *practical*.

There is no deposition testimony of any witness before the trial court that an automobile could be stopped at a right angle to the traveled lanes of the highway and come completely within the median strip. A median strip only fourteen feet in width would of necessity require many vehicles to protrude partially onto the traveled portion of the highway, as did Mrs. Engel's vehicle in this case.

Bowen who was driving the automobile in which the appellant was riding did not see the stopped Engel vehicle until he was about fifty feet behind it.

Mrs. Engel had stopped her vehicle at the crossover point in the median strip on U. S. Highway No. 75, as heretofore indicated, with her lights on and the turn indicator light signalling a left turn for a period of twenty to thirty seconds before Bowen struck Mrs. Engel's vehicle from behind. This in our opinion fails to disclose negligence on the part of Mrs. Engel as a matter of law.

In our opinion the issues of fact which the appellant asserts as controverted are immaterial to the issue as to whether or not Mrs. Engel was negligent. Thus, there is no evidence in the record presenting a genuine issue of fact as to Mrs. Engel's negligence. Under these circumstances the trial court properly sustained the appellee's motion for summary judgment.

The judgment of the lower court is affirmed.

FATZER and FONTRON, JJ., dissent.

FROMME, J., concurring: Although I agree with the majority opinion I wish to point out, in my opinion, the prohibition in K. S. A. 8-570 against stopping on the highway does not apply under the uncontroverted facts of this case.

The accident occurred in a business district adjacent to the city of Topeka. Defendant was stopped at a crossover leading into the place of business of A. & S. Mobilehomes. U. S. Highway 75 is lined with retail business establishments on both sides of the highway for many blocks north and south of where the accident occurred. There was a break in the median strip of the highway at the place where the accident occurred. This break or crossover was for the purpose of permitting a motorist going north to wait for southbound traffic before crossing over to the place of business of A. & S. Mobilehomes.

The cases relied on by appellant relate to accidents occurring on country roads outside of business or residential districts.

The prohibition in K. S. A. 8-570 against stopping on the highway does not apply under the facts of this case.