No. 48,055

ROBERT C. JONES, *Appellant,* v. CAROL M. SPENCER, *Appellee.*

(553 P. 2d 300)

Opinion filed July 23, 1976.

*John B. Markham,* of Parsons, argued the cause and was on the brief for the appellant.

*Robin L. Wick,* of Turner and Hensley, Chartered, of Great Bend, argued the cause, and *Lee Turner* and *Raymond L. Dahlberg,* of the same firm were with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This is a negligence case in which the plaintiff's vehicle was struck from the rear by that of the defendant while plaintiff was waiting to make a left turn at an intersection. A third vehicle involved in the incident made no contact with those of the plaintiff and defendant. In a jury trial both litigants were found guilty of negligence. Judgment was entered for the defendant and plaintiff has appealed.

The collision occurred about 6:10 p. m. on September 17, 1971, on old U. S. highway 75 at its intersection with 93d street, approximately ten miles south of Topeka. The highway at this

point ran north and south, was of blacktop construction, two lane, and twenty-two feet in width. The speed limit was seventy miles per hour. Ninety-third street was a county road running east and west, twenty-six feet in width. Immediately south of the intersection U. S. highway 75 was level for a distance of about 350 feet, then it descended downgrade toward a bridge over a creek. North of the intersection a short distance the highway merged southward from four lanes of traffic into two. At the time of the collision it was raining and cloudy but was still daylight.

Plaintiff Robert C. Jones, who lived at Parsons, Kansas, testified he was at the time in question driving his 1964 Buick station wagon, en route to Auburn, Kansas. At Lyndon he had purchased two cases of motor oil which he stacked in the rear of his car, directly behind the driver's seat and against the side of the left rear door. He then proceeded northward on U. S. 75 and approached the place where it intersected with 93d street, intending to turn left to go to Auburn. About one-quarter mile south of the intersection he turned on his left turn signal lights and looked into his rear view mirror. At that time no one was following him. He applied his brakes and stopped at the intersection, near the center line. The large red taillights on his car which reflected his braking action had recently been checked and were in good working order, according to his testimony. Plaintiff further testified he could not immediately make his turn because traffic from the north, coming off the four lane highway onto the two, was very heavy; he had to wait there with his foot on the brake for what seemed like five minutes; it seemed to him a lot longer than it probably was—he was just estimating—"it was over two or three minutes"; finally it appeared to him there was a break in the southbound traffic so he could make the turn; he looked to the rear through his rear vision mirror and, seeing no traffic, took his foot off the brake to put it on the accelerator; at this time he heard a noise, then he saw a pickup truck with a camper go by on the right side of his vehicle, apparently out of control; the next thing he remembered he was lying with his head on the right floorboard of his own vehicle. He learned later his car had been struck from the rear by defendant's vehicle. He testified there was room for another vehicle to go around him on the right by traveling partly on the graveled portion of the intersection.

Wayne McCauley, a Topeka resident, testified that at the time

in question he was riding as a passenger in his pickup truck driven by his employee, Ralph Hatch. They were traveling north on U. S. 75 approaching 93d street; he had been asleep but awakened because of the sudden deceleration of the pickup; he saw two red taillights dead ahead in their lane of traffic; he saw no turn signals; Hatch swerved the pickup to the right in order to miss the vehicle immediately in front of them; the pickup went by the vehicle, then went into the ditch and eventually turned over. McCauley further testified they were about one hundred to one hundred fifty feet south of the intersection when he first saw the red taillights which turned out to be those on plaintiff's Buick station wagon; at this time his driver Hatch was going about seventy to seventy-five miles per hour.

Ralph Hatch, who was twenty-one years of age at the time of the collision, testified that while driving Mr. McCauley's pickup he noticed plaintiff's car was "a good ways" ahead of him; he (Hatch) was traveling about fifty or fifty-five miles per hour; when he first saw the vehicle it was at least one hundred yards ahead of him. He further testified: "I try to stay at least two lengths away, you know, if I'm driving a car or pickup or whatever it is, I try to stay at least two lengths of that vehicle that I'm in from another vehicle"; he maintained his distance behind plaintiff's car but all of a sudden noticed he was closer to it; he did not see any type of lights on plaintiff's car and when he realized it had slowed down or stopped he hit his brakes; the truck went sideways into the ditch on the right side and when he tried to turn it back toward the blacktop it rolled over. The truck came to rest 150 feet north of the north side of the intersection.

Defendant Carol Spencer, who was Carol Neider at the time of the collision and twenty-two years of age, testified she was driving her 1971 Vega northward on U. S. 75. She was following a pickup truck at a distance of about 150 feet at a speed of sixty-five miles per hour. She had been doing so for about fifteen minutes. The heighth and width of the camper on the pickup made it impossible for her to see over or around the pickup. She first saw plaintiff's vehicle when the pickup swerved off the road to the right. She took her foot off the accelerator but did not immediately apply her brakes. She saw no lights. When she realized plaintiff's vehicle was stopped she put on her brakes but her car slid into that of plaintiff and the two remained locked together until they came to rest in a field on

the west side of the highway about one hundred feet north of the intersection.

An engineer who specialized in accident analysis testified as to the average reaction time of a motorist to an event and the coefficient of friction on varying kinds of highway surfaces and he answered hypothetical questions based on defendant's theory of the case.

Two highway patrolmen who investigated the accident shortly after its occurrence testified. They found no skid marks on the highway. The left turn signal on plaintiff's vehicle was in the down position. The lights on the rear were broken. The officer who particularly investigated the pickup crash testified he attributed inattention on the part of Mr. Hatch, the driver of the pickup, in not noticing what plaintiff's vehicle was doing as a contributing circumstance of the accident. The rain was not hard enough to cause any problems for normal driving. The point of impact of plaintiff's and defendant's vehicles was in the east lane of U. S. 75, just inside the south edge of 93d street. The pickup left the blacktop seventy-four feet south of the intersection.

In defining the issues prior to trial each party charged the other with negligence in several respects. These grounds were submitted to the jury by way of special verdicts in the form of answers to special questions. Of those charged by plaintiff against defendant she was convicted of only one—following another vehicle more closely than was reasonable and prudent having regard for the speed of such vehicle and the traffic upon and conditions of the highway. Upon appeal defendant makes no complaint as to this finding. Plaintiff was charged with the following grounds of contributory negligence and was found guilty of those italicized:

"(a) Stopping or parking his vehicle in the travel portion of the highway when said stop was not a compelled emergency stop, all in violation of the law of the State of Kansas;

"(b) *Failure to keep a proper lookout for other users of the highway including this defendant;*

"(c) Failing to keep his vehicle under proper control;

"(d) *In obstructing the traveled way of the highway and creating a situation of peril which this defendant could not guard against;*

"(e) In failing to give adequate signal;

"(f) *Failure to keep a proper lookout to rear;*

"(g) *Failure to provide adequate vision of rear through the rear window.*"

Plaintiff asserts several trial errors in connection with the reception of evidence and in the instructions but we go directly to

the overall contention of insufficiency of evidence to support the jury's findings of contributory negligence.

Subparagraphs (b) and (f) are addressed to failure to keep a lookout to the rear. Generally a motorist has a duty to keep a lookout for other users of a highway and see what there may be within his view which may affect his use of the highway (*Jarboe v. Pine*, 189 Kan. 44, 366 P. 2d 783). At the time of this accident several statutes specified duties of a driver making a left turn. K. S. A. 1970 Supp. 8-544 (*b*) prescribed that the driver of a vehicle intending to turn left at an intersection should approach the intersection in the extreme left-hand lane lawfully available to traffic moving in the direction of travel of such vehicle, and whenever practicable the left turn should be made in that portion of the intersection to the left of center. K. S. A. 1970 Supp. 8-547 (*a*) and (*b*) provided that no person should turn a vehicle at an intersection unless the vehicle was positioned as required above and until such movement could be made with reasonable safety, and then only after an appropriate signal was given continuously during not less than the last one hundred feet traveled by the vehicle before turning. K. S. A. 1970 Supp. 8-549 prescribed the signals to be given, either by hand and arm or illuminated directional signal devices on front and rear of the vehicle. K. S. A. 1970 Supp. 8-551 provided that the driver of a vehicle intending to turn to the left within an intersection should yield the right-of-way to any vehicle approaching from the opposite direction which was within the intersection or so close thereto as to constitute an immediate hazard. It is a general rule of the road that the driver of a vehicle may assume that others using the street or highway will observe the law and he is not guilty of contributory negligence in acting upon that assumption unless and until he has knowledge to the contrary (*Logan v. McPhail*, 208 Kan. 770, 776, 494 P. 2d 1191). Another rule to be borne in mind is that a driver must operate his vehicle so that he can safely stop within the distance he can clearly see vehicular traffic ahead (*Hill v. Hill*, 168 Kan. 639, 641, 215 P. 2d 159).

Plaintiff here complied with the foregoing statutes respecting his contemplated making of a left turn. He was in a position upon the highway where he had a right to be and where the law required him to be for the making of a left turn. There was no traffic device prohibiting or controlling left turns from U. S. 75. He had a right

to assume others on the road would obey the rules of the road and to rely on that assumption until he had or should have had knowledge to the contrary. He had a right to assume other motorists would not ignore his presence on the highway and ram him from the rear. There were 350 feet of level highway behind him before the highway sloped down to the creek. It was still daylight and the rain was not hard enough to interfere with normal traffic. Plaintiff testified his brake lights were working, that he was using his brakes while stopped at the intersection, and his left turn blinker was in operation. The jury exonerated him from a charge of failure to give an adequate signal and he must be deemed to have given that prescribed by statute.

The only direct testimony on the subject of lookout was that of plaintiff. He was familiar with the intersection and had traveled over it many times. He testified that as he approached it he turned on his left turn blinker and looked for traffic behind him while slowing down. He saw none. He looked in his rear vision mirror again before stopping and saw no vehicles in the lane behind him. Then when he thought he could make a left turn safely he looked again and saw nothing. Could his conduct, under all the circumstances, be held to be negligent with respect to keeping a lookout to the rear? The question is to be answered in the light of plaintiff's duty at the time, keeping in mind that upon appellate review this court accepts as true the evidence, and all inferences to be drawn therefrom, which support or tend to support the findings in the trial court, and disregards any conflicting evidence or other inferences which might be drawn therefrom, and where the evidence in a highway collision is such that reasonable minds might differ on the question of negligence of either of the drivers, the issue is one for submission to a jury (*Morris v. Hoesch*, 204 Kan. 735, 466 P. 2d 272). The duty of a driver respecting lookout in making left turns arises and is stated usually, although not always, in cases where the left turn is made either in the face of oncoming traffic from the opposite direction or while a driver of a vehicle approaching from the rear is attempting to overtake on the left, neither of which is the situation here.

Both sides cite and rely on language used in *Hallett v. Stone*, 216 Kan. 568, 534 P. 2d 232. There plaintiff was following a vehicle down a city street and defendant was following plaintiff's vehicle at a distance of about one-half block. The car in front of plaintiff's made an abrupt left turn without signaling. Plaintiff stopped her

car to avoid hitting the turning car and was struck in the rear by the defendant's vehicle. Over plaintiff's objection the jury was instructed that the driver of a vehicle has a duty to keep a lookout to the rear when the movement of his vehicle may affect the operation of a vehicle to the rear. On appeal after a jury verdict for defendant the plaintiff contended there was no evidence to support the giving of the instruction and this court agreed. After noting the absence of a specific "lookout to the rear" statute we did recognize a duty to do so in certain instances: "A motorist does not have the duty, under all circumstances, to keep a lookout to the rear, since he is entitled to rely on the exercise of ordinary care by those approaching from the rear. He may be required to maintain a lookout for a vehicle approaching from the rear when the presence of such vehicle is known, or if he is intending to change his course." (Syl. para. 1.) We further said that the plaintiff in *Hallett* did not execute any kind of maneuver which would trigger the duty to look to the rear and the exercise of due care under the circumstances did not require her to do so. We concluded:

"As given in this case the instruction would place a burden on drivers to keep a lookout to the rear at all times, which clearly is not the law. On the facts in this case the instruction is not in accordance with the primary duty of a driver to maintain a lookout ahead, and the right of every motorist to rely on the exercise of ordinary care by the driver behind him.

"Even if it be assumed the plaintiff failed to keep a proper lookout to the rear, that fact played no part whatsoever in causing the accident. Had she been fully aware of defendant Stone's presence, the plaintiff could not have acted differently. Moreover, since the defendant Stone was a half block behind the plaintiff, the plaintiff could assume the defendant Stone would exercise ordinary care and come to a stop. If there was any negligence in this regard, it could not have been a proximate cause of the accident. It was not a proper issue in the case to be submitted to the jury by an instruction." (pp. 572-573.)

Our situation appears to be analogous to that in *Hallett* even though plaintiff here was contemplating a left turn. That movement was never made. The collision occurred while plaintiff was lawfully stopped preliminary to the left turn, as shown by the testimony and the point of impact. Plaintiff did testify as to his looking to the rear and this was uncontradicted, but, as in *Hallett,* even if he were negligent in this regard, it could not have been a proximate cause of the collision. The die was already cast by reason of the movement of the two vehicles behind plaintiff and there was nothing he could have done to avoid the collision. Our

conclusion is the evidence did not justify submission to the jury of the issue of proper lookout to the rear.

We turn next to the submission to the jury of ground (g) of contributory negligence—failure to provide adequate vision to the rear through the rear window. The jury's finding was obviously based on the stacking of two cases of oil immediately behind plaintiff's position in the front seat. That which has just been said with respect to plaintiff's lookout as a proximate cause of the collision is applicable. Beyond this, the only evidence on the subject, aside from a photograph of plaintiff seated in his car in front of the oil, was plaintiff's testimony that he had both an outside and an inside rear vision mirror which he used and by which he could see to the rear. An inside rear vision mirror is ordinarily positioned so that a view through the rear window may be had despite two cases of oil stacked next to the left rear door, as were plaintiff's, and that appears to be the situation as indicated by plaintiff's photographic exhibit. Again it must be held there was insufficient evidence to submit this ground of negligence to the jury.

The fourth ground of negligence found by the jury, subparagraph (d), was obstructing the traveled portion of the highway and creating a situation of peril which this defendant could not guard against. This ground is closely akin to that in (a) of defendant's charges of contributory negligence, which was based on K. S. A. 8-570 (a) (Corrick 1964) providing:

"(a) Upon any highway outside of a business or residence district no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled part of the highway when it is practical to stop, park, or so leave such vehicle off such part of said highway, but in every event a clear and unobstructed width of at least twenty feet of such part of the highway opposite such standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle be available from a distance of 200 feet in each direction upon such highway."

Over plaintiff's objection the jury was instructed as to the foregoing statute and much of defendant's questioning both upon cross-examination of plaintiff and direct examination of defendant's accident expert, again over plaintiff's objection, was premised upon the assumption plaintiff was "parked" on the highway in violation of the statute, in lieu of which plaintiff should either have "parked" off the highway or foregone his turn at this particular intersection. We do not believe this statute was ever meant to be applied to a

motorist who temporarily stops his vehicle on the roadway for the purpose of making a legal left turn, and we so hold. The issue was dealt with in a similar situation in *Smith v. Engel*, 206 Kan. 298, 477 P. 2d 937. There the defendant was traveling on the inside lane of a four lane highway upon which each pair of lanes was separated by a fourteen foot concrete median strip except at crossover points. Defendant had pulled into a cross-over to make a left turn. There was evidence her car protruded back two feet into the traveled portion of the lane from which she was turning. She was there for a period of twenty to thirty seconds with her turn signal on, waiting for oncoming traffic to clear, when she was struck from the rear by the vehicle in which plaintiff was riding. On plaintiff's behalf it was urged defendant could be held to be stopped or parked in violation of K. S. A. 8-570 (*a*) because her vehicle protruded two feet into the lane of traffic. This court held the statute inapplicable and ruled as a matter of law that defendant was not negligent. We noted it was legal for defendant to make a left turn at that particular point and to do so would necessitate some protrusion of the rear of her vehicle onto the traveled portion of the highway. Although the highway was four lane there and is two lane here, we think the principle in *Smith* is applicable. Each driver was stopped in a traffic lane waiting to make a left turn safely. The evidence did not justify submission of this ground of negligence to the jury and the judgment for defendant must be set aside.

The result is plaintiff stands absolved of contributory negligence while defendant remains convicted of one ground of negligence. Accordingly the judgment is reversed with directions to enter judgment for plaintiff on the issue of liability and to retry the separate issue of damages.

APPROVED BY THE COURT.

FROMME, J., dissenting. This is a fact case and should not be reversed or remanded on the issue of damages only. If the verdict, which was entered on special questions in favor of the defendant, was infected and therefore should be reversed, it is totally infected and invalid as to both the plaintiff and the defendant. A new trial in such case should be ordered on all issues. Defendant won the case all the way in the trial court on special questions approved by both attorneys. The jury found the plaintiff-appellant guilty of contributory negligence which was a proximate cause of the accident

and set forth the amount of damages in money which the plaintiff suffered as "$NONE".

Although the jury found plaintiff negligent in four out of the seven possible questions on negligence submitted, it is true the jury did find defendant negligent in one particular, *i. e.*, following another vehicle (not the plaintiff's vehicle) more closely than reasonable and prudent. However, after winning a total verdict before the jury, defendant comes away from this court with a verdict of liability against her and is subjected to a new trial on the issue of damages only. When the majority opinion is handed down by this court it will come as quite a shock to the defendant-appellee.

This court has repeatedly held a new trial on the issue of damages only should not be granted when there appears a strong suspicion that inadequate damages were awarded as a compromise on the issues of liability and damages. Such a compromise infects the entire verdict of the jury and renders it totally invalid. See *Timmerman v. Schroeder,* 203 Kan. 397, 454 P. 2d 522, and *Corman, Administrator v. WEG Dial Telephone, Inc.,* 194 Kan. 783, 402 P. 2d 112, as typical cases.

I do not question that in those few inadequate-damage cases where the evidence and the verdict clearly establishes the defendant's negligence and absolves the plaintiff of contributory negligence this court can and has reversed the judgment and remanded the case for a new trial on the issue of damages only. See *Hallett v. Stone,* 216 Kan. 568, 534 P. 2d 232.

However, I find no case where this or any other appellate court has disapproved a jury verdict on the issue of plaintiff's negligence and approved that verdict as to defendant's negligence when there was conflicting evidence introduced at the trial which would support negligence as to both parties.

As stated in *Allen v. Ellis,* 191 Kan. 311, 316, 380 P. 2d 408, the main object of special questions is to bring out the various facts separately in order to enable the court to apply the law correctly and to guard against any misapplication of the law by the jury.

In the present case the jury correctly answered the questions as they evaluated the evidence and assessed the credibility of the witnesses. Their answers were consistent with the law. A plaintiff who is found to be negligent and whose negligence is found to be a proximate cause of the accident is not entitled to recover damages from a negligent defendant. The jury by answers to special questions so found.

The use of special questions is a method to test the jury's application of the law in the instructions to the facts found from the evidence. The use of special questions should not be used to separate the findings and change a verdict at the trial level in favor of the defendant to a verdict in favor of the plaintiff at the appellate level. Neither party objected to any of the special questions submitted by the court. In fact the record indicates all questions were approved by the parties. The verdict entered thereon and approved by the trial court was either all wrong, in which case a new trial should be granted on all issues, or it was all right and should be affirmed.

Now let us turn to one of the findings of the jury on which plaintiff was found negligent. The jury found plaintiff was contributorily negligent "In obstructing the traveled way of the highway and creating a situation of peril which this defendant could not guard against."

As stated in *Guerra v. Jaeger*, 204 Kan. 309, Syl. 3, 461 P. 2d 737, and recently followed in *Simpson v. Davis*, 219 Kan. 584, 549 P. 2d 950, contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection and which is the legally contributing cause, cooperating with the negligence of the defendant, in bringing about the plaintiff's harm. It is conduct which falls short of the standard to which a reasonable man should conform in order to protect himself from harm. What constitutes contributory negligence is generally a question of fact for the jury. It cannot be equated to violating some traffic law.

The majority opinion attempts to circumvent the force and effect of the jury's answer to the question relating to obstructing the traveled portion of the highway by discussing the statute, K. S. A. 8-570 (*a*) (Corrick 1964) which prohibits a motorist from stopping or parking his vehicle upon the paved portion of a highway outside of a business or residence district. We note that stopping on the traveled portion of a highway for the purpose of making a left turn is not one of the compelled stops permitted under sub-section (*b*) of this statute. This court has never held, before today, that a motorist on a 70 mile per hour highway outside a business or residence district may stop his vehicle in the only northbound lane of traffic thus blocking the traveled portion of the highway. The case of *Smith v. Engel*, 206 Kan. 298, 477 P. 2d 937, cited by the

majority, arose from an accident within the business and residential district of the city and the statute does not prevent stopping in such an area. The same is true of the location of the accident in *Hallett v. Stone,* supra.

Our holding today appears to be in direct contradiction to what was said in *Applegate v. Home Oil Co.,* 182 Kan. 655, 324 P. 2d 203. There it was said:

". . . The special finding established there was no excuse for parking on the highway; that a reasonably prudent driver would not have stopped the truck where it was stopped but would have sought a safer place. The *stop was not a compelled stop as authorized by G. S. 1949, 8-570 (b),* and Walton's improper parking constituted negligence as a matter of law. . . ." (p. 663.)

The prohibition against stopping on a through high-speed highway is for the protection of those using the highway. The stopped vehicle creates an unexpected hazard. I see little difference between stopping temporarily to check the tires or brakes and stopping to wait for the opportunity to make a left turn. Both create hazards.

In our present case, assuming that the plaintiff was violating no traffic laws, he still had a duty under the attending circumstances to comply with this fictional standard to which a reasonable man should conform in order to protect himself from harm. Considering that plaintiff stopped his car in the traveled portion of the single northbound lane of a 70 mile per hour country highway, 22 feet wide, just 350 feet after topping a rise; considering further that the time of day was 6:10 p. m. on a weekday when traffic to and from Topeka was exceptionally heavy and it was raining; and considering further that three persons coming from the south testified there were no turn signals visible on his stopped car—should this court overturn the jury's finding and hold he was not negligent as a matter of law? I think the answer is obviously no.

I do earnestly urge the majority of this court to consider the effect of their holding with regard to K. S. A. 8-570 (a) (Corrick 1964) which is now K. S. A. 8-1569, and remains substantially unchanged. The opinion as written lightly disposes of the application of the statute to stopping for a left turn without considering subsection (b) which refers to compelled stops. The decision seems to be based entirely on cases which have previously recognized that the statute does not apply in business or residence districts. The majority opinion states, ". . . We do not believe

this statute was ever meant to be applied to a motorist who temporarily stops his vehicle on the roadway for the purpose of making a legal left turn, and we so hold." This statement is made without considering that portion of the statute which prohibits stopping ". . . when it is practical to stop, park, or so leave such vehicle off such part of said highway, but in every event a clear and unobstructed width of at least twenty feet of such part of the highway opposite such standing vehicle shall be left for the free passage of other vehicles . . ." Neither does the court consider the situations in which the law has been applied and considered by this court. (See 21 case annotations following K. S. A. 8-570 [repealed] [Weeks 1975].)

Before concluding this dissent I want to discuss two cases relied on by the majority in support of their holding. The first is *Hallett v. Stone*, supra. In *Hallett* the accident occurred on a city street where speed is controlled and turns at intersections are commonplace. There is no prohibition in the statute (K. S. A. 8-570 [a], supra) against stopping in the traveled portion of such a road or highway. The prohibition is specifically excepted within a business and residence district. *Hallett* is not controlling. The proposition we found controlling in *Hallett* is stated as follows:

". . . A verdict cannot be upset if there is any evidence in the record to support it, where such issue is clearly presented without complicating factors, but such rule yields to the impact of admissions made by a party in his testimony while a witness in the case, and such admissions are binding and conclusive upon him if uncontradicted or unexplained, whether such admissions are elicited on direct examination or on cross-examination of the party. [Citations omitted.]" (p. 575.)

The negligence of defendant was determined in *Hallett* as a matter of law on the admissions made by the defendant which were uncontradicted. In contrast there are no admissions of negligence in this case by either party and there is conflicting evidence which should be left to a jury.

The second case needing comment is cited by the majority to support the principle that a person who stops his car on a highway is not guilty of negligence. That case is *Smith v. Engel*, supra. In *Smith*, as pointed out in the concurring opinion, the accident occurred in a business district adjacent to the city. The defendant was stopped in a crossover or break in the median strip which was provided for the purpose of permitting motorists to wait for a break in traffic so they could cross over to the other side of the

street.   No question was presented on appeal in *Smith* as to the negligent acts of the driver of the car which rear ended the car in the crossover lane.   The facts and circumstances of that case are entirely dissimilar and it lends very little support to the holding in the present case.   The sole question there decided was "what constitutes a genuine issue as to any material fact" when a motion for summary judgment in favor of defendants has been sustained by a trial court.

The jury in the present case after listening to the witnesses found that both plaintiff and defendant were negligent and returned a verdict in favor of defendant which was approved by the trial court.   This is essentially a fact case and should be affirmed on appeal.

KAUL, J., joins in the foregoing dissenting opinion.